GREGORY PANKO, Plaintiff-Appellant, *v.* THE COUNTY OF COOK, Defendant-Appellee.

First District (4th Division) No. 61941

Opinion filed October 6, 1976.

Gregory Panko, of Chicago, for appellant, *pro se.*

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Gregory Panko, commenced this *pro se* action on March 23, 1972, against the defendant, County of Cook, for alleged battery arising out of an incident on March 23, 1970, wherein two of the latter's employees falsely seized his arm and incorrectly sought to pull him out of a courtroom. The plaintiff failed to allege in his complaint that a notice of injury had been filed with the clerk of Cook County pursuant to section 8—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 8—102) (hereinafter referred to as Tort Immunity Act). The instant cause was dismissed for want of prosecution on August 15, 1974. Although the plaintiff submitted motions on August 21, 1974, which respectively sought (1) to vacate the prior dismissal order and (2) for the entry of a default order on the ground that the defendant failed to file an appearance, the trial court, on September 25, 1974, granted defendant's motion to strike the complaint on the basis that it failed to state a cause of action.

On October 24, 1974, the plaintiff moved to vacate the September 25, 1974, order and to enter a default judgment in his favor. The defendant filed a reply to such motion in which it alleged that section 8—103 of the Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 8—103) required the dismissal with prejudice of said case since the plaintiff failed to serve the appropriate county officials with a notice of injury within six months from the date of the injury or cause of action. The plaintiff submitted a response to the defendant's reply on December 12, 1974, alleging, among other things, that sections 8—102 and 8—103 of the Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, pars. 8—102, 8—103) were arbitrary, inequitable and hence unconstitutional in light of the equal protection clauses of the United States (U.S. Const., amend. XIV, §1) and Illinois (Ill. Const. 1970, art. 1, §2) constitutions. At a hearing conducted on January 10, 1975, the trial court vacated the dismissal order of September 25, 1974, and then granted the plaintiff leave to file an amended complaint which the latter filed on January 24, 1975.

While the plaintiff's amended complaint attempted to state a cause of action, he again failed to allege that the requisite notice of injury had been filed. On February 4, 1975, the defendant submitted a motion to strike and dismiss the plaintiff's amended complaint primarily on the ground that the latter did not allege that he filed a notice of injury within six

months of the injury. The plaintiff respectively moved on the same date for (1) a default summary judgment on the basis that the defendant failed to file an appearance and (2) leave to file a detailed reply to the defendant's motion to strike and dismiss. Such reply was submitted on February 7, 1975, in which the plaintiff contended that sections 8—101, 8—102, and 8—103 of the Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, pars. 8—101, 8—102, 8—103) infringed the respective equal protection clauses of the United States (U.S. Const., amend. XIV, §1) and (Ill. Const. 1970, art. 1, §2) constitutions. On February 14, 1975, the trial court entered an order (1) granting the defendant leave to file an appearance instanter, (2) denying the plaintiff's motion for a default summary judgment, and (3) sustaining the defendant's motion to strike the plaintiff's amended complaint and dismiss cause with prejudice on the ground that the controverted sections of the Tort Immunity Act were constitutionally valid and applicable to the instant case. The plaintiff then filed a notice of appeal with the clerk of the circuit court of Cook County.

In seeking a reversal of the dismissal order of February 14, 1975, the plaintiff maintains that sections 8—101, 8—102, and 8—103 of the Tort Immunity Act (1) are unconstitutional in light of the respective equal protection clauses of the United States (U.S. Const., amend. XIV, §1) and Illinois (Ill. Const. 1970, art. 1, §2) constitutions; (2) are contextually inapplicable to the matter at bar; and (3) were not timely and properly pleaded and therefore waived with respect to the instant action. Besides his chastisement of the above sections of the Tort Immunity Act, the plaintiff also argues that he was entitled to a default summary judgment against the defendant and that his original and first amended complaints stated a valid cause of action for battery.

We first consider the plaintiff's contention that sections 8—101, 8—102, and 8—103 of the Tort Immunity Act infringed the equal protection clauses of the United States [1] and Illinois[2] constitutions. In support of such position, the plaintiff asserts that such statutes unconstitutionally confer less liability upon public employees and corporate public entities for the same kind of injury under like circumstances than upon nonpublic employees and corporate nonpublic entities. Moreover, it is stressed that the six-month notice of injury requirement of the controverted provision does not afford equal protection to those individuals who experience personal injury caused by a public employee, rather than by a private employee since the person injured by the former employee cannot avail himself of the two-year statute of limitation provision contained in section

---

[1] Section 1 of the fourteenth amendment provides in relevant part that "[n]o State shall ° ° ° deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., amend XIV, §1.)

[2] Section 2 of article 1 provides in pertinent part that "[n]o person shall ° ° ° be denied the equal protection of the laws." (Ill. Const. 1970, art. 1, §2.)

14 of "An Act in regard to limitations" (Ill. Rev. Stat. 1973, ch. 83, par. 15).[3] We cannot subscribe to either such contention.

■■ It is well settled that a legislative enactment does not automatically violate one's Federal and State constitutional rights to equal protection of the law merely because (1) the statutory classification contained therein is not accurate, scientific, or harmonious. (*Schiller Park Colonial Inn, Inc. v. Berz*, 63 Ill. 2d 499, 512, 349 N.E.2d 61, 68) or (2) the statute treats one class of individuals or entities differently from another class provided it affects all members of the same class alike. (*E.g., Koblyanski v. Chicago Board of Education*, 63 Ill. 2d 165, 175, 347 N.E.2d 705, 710; *Hamilton Corporation v. Alexander*, 53 Ill. 2d 175, 179, 290 N.E.2d 589, 591.) Rather, the traditional equal protection test under both the United States and Illinois constitutions consists of a bifurcated inquiry which first identifies the purposes or objectives of a legislative scheme and then asks whether the controverted classification bears a rational relationship to a legitimate legislative purpose. (*E.g., S. Bloom, Inc. v. Mahin*, 61 Ill. 2d 70, 76, 329 N.E.2d 213, 217; *In re Estate of Karas*, 61 Ill. 2d 40, 47, 329 N.E.2d 234, 238.)

■■■ Applying this test to the legislative provisions in question, it is apparent that there was not an encroachment of the plaintiff's right to equal protection of the law either under the United States or Illinois constitution. The disputed sections of the Tort Immunity Act in effect at the time of this suit respectively established (1) a one-year limitation provision for commencing a civil action against a local public entity,[4] (2) a requirement that a person bringing such action file, within six months from the date of the injury, a signed written statement with the appropriate governmental official,[5] and (3) that the failure to serve such

---

[3] Section 14 of "An Act in regard to limitations" provides as follows:
"Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued." (Ill. Rev. Stat. 1973, ch. 83, par. 15.)

[4] Section 8—101 contained the one-year limitation provision and provided as follows:
"No civil action may be commenced in any court against a local entity for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." (Ill. Rev. Stat. 1971, ch. 85, par. 8—101.)

[5] Section 8—102 of the Tort Immunity Act delineated the six-month notice of injury requirement in the following manner:
"Within six months from the date that the injury or cause of action referred to in Sections 8—101; 8—102 and 8—103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving in substance the following

notice would result in dismissal of the suit with prejudice.[6] Besides it being held that sections 8—102 and 8—103 apply equally to all those in the same class, namely, local governmental entities and their employees (*King v. Johnson*, 47 Ill. 2d 247, 250, 265 N.E.2d 874, 876), judicial construction of these sections has also indicated that they have a common purpose of furnishing timely notice of injuries so that there can be an investigation and a prompt settlement of meritorious claims. (*E.g.*, *Saragusa v. City of Chicago*, 63 Ill. 2d 288, 293, 348 N.E.2d 176, 179-80; *King v. Johnson*, 47 Ill. 2d 247, 250-51, 265 N.E.2d 874, 876; *Klein v. City of Chicago*, 10 Ill. App. 3d 670, 674, 294 N.E.2d 755, 757.) Moreover, the controverted classification regarding giving notice of injury within six months to a public employee or corporate entity as opposed to a nonpublic employee or corporate entity does bear a rational relationship to this legislative purpose of imposing tort liability on all local governmental entities on a fair and orderly basis. In the first place, a local government entity must anticipate that the number of claims made against it will far exceed those brought against a private individual. (*Saragusa v. City of Chicago*, 63 Ill. 2d 288, 293, 348 N.E.2d 176, 180.) Further, in contradistinction to private individuals or corporate entities, local public entities must determine their budgets in advance for tax purposes and, by knowing within a reasonable length of time the approximate number of claims against them, such purpose can be facilitated. (*King v. Johnson*, 47 Ill. 2d 247, 251, 265 N.E.2d 874, 876.) Thus, consistent with prior adjudications that have considered the same constitutional challenge to these respective sections of the Tort Immunity Act (*e.g.*, *Saragusa v. City of Chicago*, 63 Ill. 2d 288, 293, 348 N.E.2d 176, 180; *Housewright v. City of La Harpe*, 51 Ill. 2d 357, 361, 282 N.E.2d 437, 440) we accordingly believe that the controverted provisions are reasonable and do not infringe the equal protection clauses of the United States (U.S. Const., amend. XIV, §1) or Illinois (Ill. Const. 1970, art. 1, §2) constitutions.

■■ We also reject the plaintiff's contention that sections 8—101,

---

information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any." (Ill. Rev. Stat. 1971, ch. 85, par. 8—102.)

[6] If an individual failed to serve notice of injury as provided under section 8—102 of the Tort Immunity Act, section 8—103 provided as follows:

"If the notice under Section 8—102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing." (Ill. Rev. Stat. 1971, ch. 85, par. 8—103.)

8—102, and 8—103 are inapplicable to the instant case. Besides discounting as untenable the plaintiff's assertion that section 8—101 of the Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 8—101) is inapplicable because it was amended prior to the filing of the defendant's motion to dismiss on February 4, 1975, to include a two-year statute of limitations instead of the former one-year period, we further believe that his claim with regard to section 8—102 and 8—103 is equally implausible. While the plaintiff posits that these provisions apply only to accidental injury and not to an intentional battery, a perusal of the language contained in the two controverted sections does not buttress such position. Although section 8—102 contains a fourfold mention of the word "accident," it is important to note that such word is referred to solely in the context of what the contents of the signed written statement that is served to the appropriate governmental official can contain. Moreover, the definition of the word "injury, as mentioned throughout both controverted sections does not relegate such legislative provisions to accidental encounters, but is applicable to any tortious injury to a person or his property. (*Public Litho Service, Inc. v. City of Chicago*, 8 Ill. App. 3d 315, 317, 290 N.E.2d 677, 679; Ill. Rev. Stat. 1973, ch. 85, par. 1—204.)[7] Hence, we believe that sections 8—102 and 8—103 are contextually applicable to this action.

The plaintiff next maintains that the three controverted sections were waived with respect to this action since they were not plead (1) on or before April 30, 1972, after the defendant had already been served in March, 1972; (2) within the 28-day period after August 21, 1974, which the trial court granted defense counsel to file an appearance; and (3) in the defendant's initial motion to dismiss. However, since it is clear from the record that (1) the plaintiff did not file his suit until after the six-month notice of injury term had already expired and (2) the defendant expressly raised sections 8—101, 8—102, and 8—103 in its motion to strike and dismiss the plaintiff's amended complaint and alleged that the plaintiff did not comply with any such provisions, we perceive no merit to the plaintiff's contention.

Besides the invalidity of the plaintiff's criticism regarding the respective sections of the Tort Immunity Act, we are of the opinion that a default summary judgment should not have been entered against the defendant pursuant to the plaintiff's motion of February 4, 1975. While the plaintiff bases such assertion on the fact that the defendant failed to file an answer or an appearance prior to its motion to dismiss his amended complaint it must be remembered that default judgments are drastic remedies which

---

[7] Section 1—204 of the Tort Immunity Act defines the word "injury" as follows:

" 'Injury' means death, injury to a person, or damage to or loss of property. It includes any other injury that a person may suffer to his person, reputation, character or estate which does not result from circumstances in which a privilege is otherwise conferred by law and which is of such a nature that it would be actionable if inflicted by a private person." (Ill. Rev. Stat. 1973, ch. 85, par. 1—204.)

are not encouraged by courts and are entered with great caution and only as a last resort when necessary to enforce a just demand. (*E.g., Dienthal v. Branovacki*, 23 Ill. App. 3d 726, 728, 320 N.E.2d 177, 179; *Rosewood Corp. v. Fisher*, 20 Ill. App. 3d 422, 427, 314 N.E.2d 294, 298.) Moreover, such motions presented by plaintiffs are addressed to the sound discretion of the trial court. Here, even though the defendant did not appear and did not file an answer on the dates cited in the plaintiff's motion for a default summary judgment,[8] the record does evince that the defendant did respectively appear and argue before the trial court concerning its motions to strike and dismiss the plaintiff's original and amended complaints. Moreover, the defendant did file a reply to the plaintiff's motion to vacate the dismissal of his original complaint. In light of such litigious efforts as well as the fact that plaintiff did not serve the defendant a notice of injury within the six months of the date of his alleged injury, we therefore conclude that the trial court did not abuse its discretion in denying the plaintiff's motion.

In view of our prior consideration of the applicability of sections 8—102 and 8—103 of the Tort Immunity Act, we believe that it is not necessary to pass on whether the plaintiff's amended complaint stated a valid cause of action.

For the foregoing reasons, the order of the trial court granting the defendant's motion to strike and dismissing the plaintiff's cause with prejudice is affirmed.

Affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.

---

[8] In the plaintiff's motion for a default summary judgment, he alleged that although the defendant was served in March, 1972, it failed to file an appearance on or before April 20, 1972, the return date, and did not file an answer within ten days thereafter. Moreover, the plaintiff noted that on August 21, 1974, defense counsel was summoned before the trial court and, after being advised of this cause, he was given 28 days to file an appearance and submit responsive pleadings which he failed to do. The plaintiff further mentioned that an appearance was not filed for the defendant from September 18, 1974, to February 4, 1975.