ENRICO G. DI SANTO et al., Plaintiffs-Appellants, v. THE CITY OF WARRENVILLE et al., Defendants-Appellees.

Second District    No. 76-558

Opinion filed May 4, 1978.—Rehearing denied June 9, 1978.

Chester A. Lizak and Alan L. Stefaniak, both of Schmidt, DiMonte, Baker & Lizak, of Chicago, for appellants.

Isham, Lincoln & Beale and Raymond A. Fylstra, of Chapman & Cutler, both of Chicago, and John T. Perry, of Vescelus & Perry, of Wheaton, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiffs, on behalf of themselves and all users of water from the defendant city, sued to rescind a contract by which the city had acquired a waterworks and sewerage system from a private owner. They also sought refunds on behalf of the class. The trial court dismissed the complaint on grounds of laches and lack of standing; and further found that the class action was improper. Plaintiffs appeal.

The City of Warrenville and the surrounding area had been dependent upon Westview Utilities Company, a subsidiary of Utilities, Inc. (hereinafter Westview), for its water supply and sewerage services. On some unspecified date before September 10, 1974, the city engaged Keith R. Cardy, a management consultant, to appraise Westview and to study the feasibility of a purchase of the utility. John Nuveen and Company, a Delaware corporation, was hired to determine how much the city should

pay in bonds to Westview. Cardy placed a value of $2,873,000 on Westview and recommended a purchase price of $2,900,000. Cardy also stated that it was feasible for the city to issue $2,700,000 worth of bonds at 6% interest.

On August 6, 1974, the city entered into an agreement with Westview in which it agreed to pay $3,600,000 for the utility and Westview agreed to save the city harmless from any misrepresentation or material omissions made by it. In a separate agreement Westview agreed to buy $3,650,000 of municipal bonds from the city, the transaction to take place simultaneously with the purchase by the city of the plant and equipment. The agreement was consummated on or about September 10, 1974. The Nuveen Company allegedly reported that the retail value of the bonds, on September 10, 1974, was $2,931,588.

On April 12, 1975, the city adopted an ordinance authorizing the issuance of new waterworks and sewerage revenue bonds, $3,650,000 of which were exchanged for the 1974 bonds. Both bond issues were of two classes, $2,000,000 Series A and $1,650,000 Series B. Westview retained the $1,650,000 Series B Bonds but transferred the $2,000,000 Series A Bonds to the underwriter, Nuveen Company. Nuveen, on March 26, 1975, transferred the Series A Bonds together with $23,000,000 of additional municipal bonds to the United States Trust Company of New York and then sold shares in the beneficial interest of the trust to the public.

In June of 1976 the city councils of Warrenville and Naperville approved an agreement whereby Naperville would purchase two-thirds of the Warrenville waterworks and sewerage system for $3,000,000. On June 25, 1976, the Illinois Environmental Protection Agency awarded Warrenville $2,837,600 for construction of a sewerage collection system, conditioned on the foregoing sale to Naperville. On July 6, 1976, the plaintiffs filed their suit in the Circuit Court of Du Page County seeking rescission of the sale of September 10, 1974, on various grounds. In count I they sought rescission on the ground of fraud; in counts II and IV they sought rescission on the grounds of inadequacy of consideration and unconscionability; in count III they sought rescission on the ground that the transaction violated plaintiffs' due process and equal protection rights; and in count V plaintiffs sought a court order compelling the City of Warrenville to institute condemnation proceedings. In counts I-IV the plaintiffs requested refunds of excess water charges in addition to the equitable rescission of the contract. Also, in each of the five counts the plaintiffs purported to represent all persons similarly situated.

On July 23, 1976, the defendants filed a motion to dismiss pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48) on the grounds of laches and lack of standing to bring the action; they also sought dismissal of the class action aspects of the suit and also dismissal of

the complaint on the ground of failure to state a cause of action pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45).

On August 13, 1976, following a hearing, the trial court dismissed the complaint with prejudice on the grounds of laches and lack of standing. The court also found that apart from the affirmative defenses the class aspects of the suit could not be maintained.

## I.

■■ We first address the issue of plaintiffs' standing to bring the suit as a preliminary question and conclude that contrary to the finding of the trial court the plaintiffs do have a sufficient interest in the controversy to bring suit. "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a * * * court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult * * * questions.' *Baker v. Carr*, 369 U.S. 186, 204, 7 L. Ed. 2d 663, 82 S. Ct. 691, 703 (1962)." (*Flast v. Cohen*, 392 U.S. 83, 99, 20 L. Ed. 2d 947, 962, 88 S. Ct. 1942, 1952 (1968). See also *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 262, 50 L. Ed. 2d 450, 461-63, 97 S. Ct. 555, 561-62 (1977); *Murphy v. Collins*, 20 Ill. App. 3d 181, 186 (1974).) We have recently stated that the "purpose of the doctrine of standing is merely to preclude persons having no interest in the controversy from bringing suit" and that "it is not meant to preclude a valid controversy from being litigated." *Commonwealth Edison Co. v. Community Unit School District No. 200*, 44 Ill. App. 3d 665, 670 (1976). Compare *People ex rel. Gordon v. City of Naperville*, 30 Ill. App. 3d 521, 524-25 (1975).

■■ The defendants, at least by implication, suggest that the named plaintiffs cannot maintain this action because they suffer in common with all other water users. However, the fact that the plaintiffs' "interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." (*Sierra Club v. Morton*, 405 U.S. 727, 734, 31 L. Ed. 2d 636, 643, 92 S. Ct. 1361, 1366 (1972). See also *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686, 37 L. Ed. 2d 254, 269, 93 S. Ct. 2405, 2415 (1973). In the instant case, the plaintiffs are not merely asserting "the common interest of all citizens in procuring obedience to the law" (*Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 281 (1975); see also *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 217, 41 L. Ed. 2d 706, 716, 94 S. Ct. 2925, 2930 (1974)); rather, the plaintiffs complain of a sharp rise in water rates and liability as

water users resulting from the city's $3,650,000 indebtedness, as a direct consequence of the defendants' illegal conduct; this allegation is sufficient to confer standing on the plaintiffs as to counts I-IV. And obviously they have standing to challenge, in count V, the city's alleged taking of their property without just compensation.

This case is thus quite different from *Bowes v. City of Chicago*, 3 Ill. 2d 175 (1954), upon which the defendants rely. In *Bowes*, the plaintiffs sought to enjoin the City of Chicago, the Chicago Park District and a private corporation from constructing a water filtration plant in the Chicago Harbor; the plaintiffs "sought to have a determination of the many questions concerning the legality of the construction of the proposed filtration plant." (3 Ill. 2d 175, 185.) The supreme court held that those plaintiffs who had brought action solely as water users had no standing to sue. The water users in *Bowes*, however, had not been required to pay higher water fees as a consequence of the defendants' allegedly illegal conduct; rather, they were merely asserting the general, public interest in "procuring obedience to the law." In the instant case, the plaintiffs allege a direct, substantial economic injury and are not acting merely, in a sense, as a private attorney general.

In *Price v. City of Mattoon*, 364 Ill. 512 (1936), also cited by the defendants, water users and taxpayers in Mattoon, Illinois, sought a court order enjoining the City of Mattoon and others from "the financing and construction of a waterworks purchase-and-improvement program instituted by the municipality." (364 Ill. 512, 513.) The supreme court held that the taxpayers had no standing to sue since the complained-of bond issue was chargeable solely to water revenues; the water users, for their part, had failed to allege any immediate harm; their complaint was devoid of "any allegations of water rates determined by the city." (364 Ill. 512, 515.) Thus, the water users' complained of injury was both future and speculative; however, the court pointed out that the water users "can avail themselves of adequate remedies at law if and when their conjectured injuries materialize." (364 Ill. 512, 515.) In the instant case, the plaintiffs have not merely alleged a speculative injury that may come to pass at some future date, rather, they have alleged a present, substantial economic injury directly traceable to the defendants' allegedly fraudulent conduct.

The *Price* case can be interpreted to mean that a citizen who seeks to redress a public wrong must suffer in some special way, different in degree or kind from the rest of the public, in order to maintain the action; in this context, see also *Droste v. Kerner*, 34 Ill. 2d 495, 504 (1966). This rule has, however, been relaxed in *Paepcke v. Public Building Com.*, 46 Ill. 2d 330, 341 (1970) (see also *People ex rel. Hamer v. Board of Education*, 22 Ill. App. 3d 130, 133 (1974); *Lynch v. Devine*, 45 Ill. App. 3d 743, 750 (1977)). In *Paepcke*, the supreme court held that "members of

the public, at least taxpayers * * *" should have the right "to enforce the trust upon which public property is held," without showing special damage. (46 Ill. 2d 330, 341.) In the instant case, water rate payers seek relief from a fraud allegedly perpetrated upon the public by Warrenville officials and others; the injuries that the plaintiffs have allegedly suffered appear more substantial and more direct than the injuries the taxpayers in *Paepcke* allegedly suffered. Hence, in light of *Paepcke*, it seems that the plaintiffs here have standing to maintain this action.

## II.

Before reaching the issue of laches which the trial court found an additional basis for dismissing the complaint, we examine the plaintiffs' pleading to determine whether a cause of action has been stated.

■■ In count I, the plaintiffs seek a rescission of the sale on the ground of fraud. Fraud requires a showing of a misrepresentation of an existing material fact, coupled with scienter, deception, reliance and injury (*Roth v. Roth*, 45 Ill. 2d 19, 23 (1970)); or the concealment of a material fact by a person who is obliged to speak (*Lagen v. Lagen*, 14 Ill. App. 3d 74, 79 (1973)). Constructive fraud can arise from a breach of a fiduciary duty; the breach of such a duty by a public official constitutes fraud on his constituents. See, *e.g., Peabody v. Sanitary District*, 330 Ill. 250, 264 (1928).

The conduct of the city alleged to be fraudulent essentially is described as paying $3,600,000 for Westview when its management consultant had placed a value of $2,873,000 on it and had recommended a purchase price of $2,900,000; with the further claim that the Cardy appraisal in itself was high. They reason that a reproduction-cost-new approach rather than an income or profit approach was used in the valuation of the utility, and that this was improper because Westview had lost money in every one of its 13 years of operation. They also claim that the Cardy appraisal wrongfully listed assets of $3,179,000 in contributions and advances in aid of construction which had been made by developers. Further conduct alleged to be fraud was that Cardy had showed a feasibility of a bond issue for $2,700,000 at 6% interest whereas the city authorized a bond issue of $3,650,000 at 7%. Further, that at the time the city exchanged the $3,650,000 in bonds for Westview, the city had been advised by Nuveen that the bonds were worth only $2,931,588, resulting in a violation of section 11—139—3 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—139—3) prohibiting sale for not less than par and accrued interest. The exchange of bonds was also included as evidence of fraudulent conduct.

■■ The allegations in this count primarily reduce to a charge that the city paid an excessive price but no claim of bribery or self dealing is made. It is axiomatic, of course, that general conclusions of fraud are not

sufficient in a pleading and that fraud is never presumed but must be shown by allegation of facts from which fraud is a necessary or probable inference. (See, *e.g., Carroll v. Caldwell,* 12 Ill. 2d 487, 494 (1958); *Browning v. Heritage Insurance Co.,* 33 Ill. App. 3d 943, 948 (1975).) It is true that inadequacy of consideration when very gross can amount in itself to a proof of fraud. (*Schwarz v. Reznick,* 257 Ill. 479, 485 (1913).) However, on the basis of the allegations in the complaint we conclude that facts are not pleaded from which fraud is the necessary or probable inference since the disparity of price between that suggested by the city's management consultant and that actually offered by the city is not so gross as to give rise to a reasonable inference of fraud.

The further allegation that Westview was not entitled to be compensated for contributions and advances made to it by developers, thus suggesting that the Westview's total proprietary capital and value was less than $200,000 would, if true, result in inadequacy of consideration from which fraud might be implied. The plaintiffs, however, have not cited any authority, statutory or decisional, that would suggest that a privately owned public utility in Illinois cannot be so compensated and we know of no such authority.

### III.

The city agreed to sell the bonds at par to Westview together with accrued interest to the date of delivery. This cannot be said to amount to fraud nor even a violation of section 11—139—3 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—139—3) as alleged. Further, none of the other allegations contained in count I including the exchange of the bonds for the purpose of facilitating the public sale and the transfer to the bond fund even remotely suggest fraud.

### IV.

■■ Similarly the plaintiffs have also argued that the mayor and members of the city council of Warrenville breached their fiduciary obligation to the plaintiffs. Assuming without deciding that Warrenville's public officials owed a fiduciary duty to nonconstituents who used the city's public utilities and bearing in mind the clear duty which the city officials did owe city residents, we find no breach of fiduciary responsibility. It is, of course, true that if the city officials had breached a fiduciary responsibility by self-dealing they could be compelled to account to the city for any profits made even if the city suffered no economic harm from the breach. (See, *e.g., Chicago ex rel. Cohen v. Keane,* 64 Ill. 2d 559, 565-66 (1976).) However, the record fails to allege any self-dealing or double-dealing with the mayor or members of the city council and at most suggests that Warrenville's officials exercised poor

business judgment. This does not amount to an allegation of fraud.

■■ The allegations of counts II and IV allege the same conduct which is charged as fraud in count I but seek rescission of the contract either on the ground of the alleged inadequacy of consideration (count II) or on the ground that the price paid for the utilities is unconscionable because grossly exorbitant (count IV). Again, neither count states a cause of action. Specific performance may be granted despite an inadequate consideration when there has been no fraud or over-reaching on the part of the parties to the contract. (See, *e.g.*, *Continental Illinois National Bank v. Llewellyn*, 67 Ill. App. 2d 171, 207 (1966).) While the plaintiffs are not defending against a prayer for specific performance of an executory contract they are in the parallel position of seeking rescission of a completely executed contract on the ground that the purchase price is too high. However, "[i]n the absence of a showing of fraud, mere inadequacy of consideration is not ground for equitable relief." *Johnson v. Fulkerson,* 12 Ill. 2d 69, 74 (1957).

## V.

■■ In count III the plaintiffs allege that the ordinances by which the city authorized the mayor to sign the contract for the purchase of the system are constitutionally invalid because the residents of the city of Warrenville had a right to petition for a referendum pursuant to section 11—139—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—139—6) while the named plaintiffs as nonresident users of the utilities had no such right. However, there is no due process right to a referendum, by either residents or nonresidents, for the construction, acquisition or enlargement of specific public improvements and the failure to provide for such a referendum does not constitute a deprivation of due process of law. *People ex rel. Hanrahan v. Caliendo,* 50 Ill. 2d 72, 83 (1971); *People ex rel. Stamos v. Public Building Com.,* 40 Ill. 2d 164, 177 (1968).

■■ Plaintiffs also argue, by implication, that even if there is no constitutional right to a referendum on the issue in question, section 11—139—6 of the Municipal Code denies them equal protection under the Constitution by affording the residents of Warrenville a right to a referendum while denying the right to the nonresident users. However, there appears to be a rational basis for allowing only residents of a city to vote on the question of whether the city should acquire the utilities since the city makes the purchase and issues the bonds. The traditional equal protection test under both the United States and the Illinois constitutions has been to first identify the purposes or objectives of a legislative scheme and then to determine whether the complained of classification bears a rational relationship to those purposes. (*Panko v. County of Cook,* 42 Ill. App. 3d 912, 915 (1976).) Here the test is satisfied in our opinion.

Plaintiffs further contend that the referendum statute violates section 12 of article I of the Illinois Constitution which provides that every person shall find a certain remedy in the laws for injuries and wrongs. It has been held that this section is an expression of a philosophy and does not mandate that a "certain remedy" be provided in any specific form. (*Sullivan v. Midlothian Park District,* 51 Ill. 2d 274, 277 (1972).) In any event, constitutional rights are not infringed when an insufficient or defective complaint is dismissed. *Zamouski v. Gerrard,* 1 Ill. App. 3d 890, 898 (1971).

## VI.

■■ The plaintiffs also seek "inverse condemnation" (count V.) They allege that they are the owners of "sewer and water improvements" on their property; they further allege that the city has invaded and trespassed upon their land by its continued use of the sewer and water improvements in servicing the city's customers who are connected to the facilities and that this amounts to an unlawful taking without due process of law. When the city of Warrenville purchased the utility it assumed by contract Westview's obligations to supply services to both contributors and others. It is not alleged that the city has breached any of its contractual obligations. Under these circumstances the prayer of count V for an order directing the city to file a condemnation petition is not based upon well-pleaded facts which would permit a writ of mandamus to issue. Eminent domain proceedings are not permitted for the purpose of ascertaining damages which may be recovered at law if a contract is breached. Rather a property owner must show an actual physical invasion of his property to be entitled to seek this relief. (*Department of Transportation v. Veach Oil Co.,* 22 Ill. App. 3d 229, 232 (1974).) Count V therefore does not state a cause of action.

■■ We therefore conclude that none of the counts of the plaintiffs' complaint states a cause of action. The trial court's dismissal order may be affirmed on this ground alone, even though the trial court did not specifically find that no cause of action was established but dismissed the complaint upon other grounds. See *Keck v. Keck,* 56 Ill. 2d 508, 514 (1974).

## VII.

In the view we have taken it is unnecessary to consider whether the plaintiffs were guilty of laches and therefore properly denied relief on that basis. However, as to counts I-IV of the complaint we would agree that plaintiffs were barred by laches. Plaintiffs argue that their delay in commencing suit was the result of defendants' fraud, but it is difficult to determine exactly what the complained of fraud consists of and when it was discovered. They argue that their attorney first became aware of the Westview sale in August of 1975 while representing another client. Since

the sale in question was a matter of public record it is difficult to see the relevance of plaintiffs' lawyer's personal discovery of the sale at a later date where there is no showing of any affirmative act of deception to prevent suspicion and inquiry. (See, *e.g., Pyle v. Ferrell,* 12 Ill. 2d 547, 554 (1958).) Of course mere delay does not of itself constitute laches without a showing of prejudice. (*Pyle v. Ferrell,* at 553; see also *Slatin's Properties, Inc. v. Hassler,* 53 Ill. 2d 325, 329-30 (1972).) But here the prejudice is quite evident. Two million dollars of the Series A Bonds had been transferred to an irrevocable trust, the trustee of which was not before the court, and even if it were the circumstances show that it would be practically impossible to return to the status quo which existed before the purchase. (*Cf. Solomon v. North Shore Sanitary District,* 48 Ill. 2d 309, 322 (1971).) In addition, Westview is no longer an Illinois public utility company, its certificates of public convenience and necessity having been cancelled.

■■■■ We could not agree, however, that laches is a bar to count V of the complaint. In that count the plaintiffs, in effect, asked for a writ of mandamus compelling the institution of eminent domain proceedings. Mandamus is classified at law and not as an action in equity. (*New-Mark Builders, Inc. v. City of Aurora,* 90 Ill. App. 2d 98, 103 (1968).) Nevertheless, the statute of limitations is applicable and laches is available as a defense. (See, *e.g., People ex rel. Fox v. Dunham,* 326 Ill. App. 562, 566 (1945); see also *Schultheis v. City of Chicago,* 240 Ill. 167, 170 (1909).) Since the limitations period for adverse possession of real property (20 years) had not run at the commencement of the action, the plaintiffs are not barred in count V by the statute of limitations. (Ill. Rev. Stat. 1975, ch. 83, par. 1; *cf. Village of Palatine v. Dahle,* 385 Ill. 621, 628 (1944).) In addition, the city can show no prejudice to support a defense of laches to count V since if a cause of action had been stated against it on this count it would be in the same position now as it was originally in compensating the plaintiffs for the alleged taking of their property.

## VIII.

Also, in the view we have taken we need not reach the trial court's determination that the suit could not proceed as a class action. We comment, however, that if the plaintiffs had stated a cause of action to upset a contract based on fraud the circumstances of this case would appear to permit a class action particularly as to the class of nonresident water users. *Steinberg v. Chicago Medical School,* 69 Ill. 2d 320, 328 (1977).

We affirm the judgment of the trial court.

Affirmed.

RECHENMACHER and BOYLE, JJ., concur.