Kathy FARNUM, Joe Farnum, and Kathy and Joe Farnum, As Next Friends and Natural Parents of Joe Jr., Cory, and Michael Farnum, Appellees,

v.

G.D. SEARLE & COMPANY, INC., a Corporation, Defendant,

and

Dr. Robert C. Smith, Dr. Raymond Fitzsimmons, Dr. John Kunciates, Appellants.

No. 68856.

Supreme Court of Iowa.

Oct. 19, 1983.

John A. McClintock and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellants.

Fredd J. Haas of Humphrey & Haas, Des Moines, for appellees.

McCORMICK, Justice.

Three different statutes of limitations exist for medical malpractice claims, depending on the status of the alleged tortfeasor. One period exists for claims against the state, a second for claims against a municipality, and a third for claims against a private party. The present case involves

statutory and constitutional questions concerning claims against physicians employed by a municipality. The trial court held that Iowa Code section 613A.5 (1981) does not bar the present malpractice claim against three physicians employed by a county hospital. We disagree and therefore reverse the court's order overruling the physicians' motion to dismiss.

Plaintiffs Kathy Farnum, Joe Farnum, and their children Joe Jr., Cory and Michael, brought this action against defendants G.D. Searle & Co., Dr. Robert C. Smith, Jr., Dr. Raymond Fitzsimmons, and Dr. John Kunciates. Plaintiffs alleged that Kathy Farnum suffered from deep vein thrombophlebitis as a result of taking the birth control pill Ovulen 28. The action against Searle was based on a products liability theory, and the action against the doctors was based on their alleged negligence in prescribing the pills. Plaintiffs alleged the doctors were employees and agents of Broadlawns Medical Center, a county hospital, but did not allege compliance with the notice provisions of Iowa Code section 613A.5 (1981). Defendant doctors moved to dismiss the petition against them because of its failure to allege the giving of the required notice or a recognized excuse for not giving it. The trial court overruled the motion on several grounds, and we granted interlocutory review of its ruling. We have decided an unrelated issue in this case in a separate opinion filed today. *See Farnum v. G.D. Searle & Co., Inc.,* 339 N.W.2d 384 (Iowa 1983).

■ When a claim is subject to section 613A.5, the petition must plead compliance with the statute or it does not state a claim on which relief can be granted. *Lattimer v. Frese,* 246 N.W.2d 255, 257–58 (Iowa 1976).

Plaintiffs commenced the present action in February 1982. They alleged facts indicating that Kathy Farnum's problem with thrombophlebitis started in 1978. Although in resisting the motion to dismiss plaintiffs alleged the action was commenced within six months of the injury as required by action 613A.5, it is clear from an affidavit attached to the resistance that Kathy Farnum's condition was diagnosed in 1978 and that in alleging the injury did not occur until November 1981 plaintiffs refer to discovery of the alleged malpractice. We interpret plaintiffs' amendment to the petition, filed at the same time as the resistance to the motion to dismiss, as having the same meaning. Therefore we assume, as do the parties, that the action was commenced within six months of the injury only if the discovery rule applies. No allegation is made that notice of the claim was given to the county within 60 days of the injury.

The appeal presents three questions. One is whether section 614.1(9) is the applicable period of limitations rather than section 613A.5. The second is whether, if section 613A.5 applies, the discovery rule is also applicable. The third question is whether, if section 613A.5 applies and the discovery rule does not, section 613A.5 violates the equal protection provisions of the federal and state constitutions.

■ I. *Applicability of section 613A.5.* Section 613A.5 provides:

Every person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 or section 613A.8 or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state time or place or circumstances or the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a

reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice.

Under chapter 613A, which governs tort liability of local governmental subdivisions, "municipality" is defined to include a "city, county, township, school district, and any other unit of local government except a soil conservation district...." § 613A.1(1). A county is thus a municipality within the meaning of this definition.

Plaintiffs acknowledge that section 613A.5 applies to ordinary tort claims against counties and county employees acting within their scope of employment. They contend, however, that the statute has been superseded for malpractice claims by section 614.1, which provides in relevant part:

> Actions may be brought within the times herein limited, respectively, after their causes accrued, and not afterwards, except when otherwise specially declared:
>
> . . . .
>
> 9. *Malpractice.* Those founded on injuries to the person or wrongful death against any physician and surgeon, osteopath, osteopathic physician and surgeon, dentist, podiatrist, optometrist, pharmacist, chiropractor, or nurse, licensed under chapter 147, or a hospital licensed under chapter 135B, arising out of patient care, within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought in the action, whichever of the dates occurs first, but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.

■ Section 614.1(9) was enacted as part of a comprehensive act as a response to "a critical situation" caused by "the high cost and impending unavailability of medical malpractice insurance." 1975 Iowa Acts ch. 239, § 1. *See Rudolph v. Iowa Methodist Medical Center,* 293 N.W.2d 550, 558 (Iowa 1980). This statutory change came in the wake of our holding a year earlier that section 614.1(2), the general statute of limitations in tort cases, was subject to a discovery rule in medical malpractice cases. *See Baines v. Blenderman,* 223 N.W.2d 199, 201 (Iowa 1974). It is obvious subsection (9) was added to restrict the discovery rule under section 614.1(2) rather than to supplant section 613A.5 in malpractice cases.

This conclusion is reinforced by three other considerations. One is the qualification in section 614.1 that its time provisions apply "except when otherwise specifically declared." Section 613A.5 constitutes a special declaration. The second consideration is that repeals by implication are not favored, special statutes control over general statutes, and separate provisions are to be harmonized when reasonably possible. Under these rules of statutory interpretation, section 614.1(9) cannot fairly be said to override section 613A.5. The third consideration is that in 1974 the legislature had amended section 613A.5 to make it applicable to actions against employees of municipalities acting within the scope of their employment. *See* 1974 Iowa Acts ch. 1263, § 5. This amendment was an apparent response to this court's holding in 1973 that claims against public hospital employees were not subject to the notice requirements of section 613A.5 as it appeared in the 1971 Code. *See Flynn v. Lucas County Memorial Hospital,* 203 N.W.2d 613, 615–16 (Iowa 1973). After having made the restrictive notice provisions of section 613A.5 applicable to claims against hospital employees by this amendment, we do not believe the General Assembly intended to terminate its applicability by the 1975 malpractice enactment.

■ We hold that the applicable period of limitations to claims against county hospital employees, including physicians, is section 613A.5 and not section 614.1(9). The trial court erred in holding otherwise.

II. *The discovery rule under section 613A.5.* This court held in *Montgomery v. Polk County,* 278 N.W.2d 911 (Iowa 1979), that section 613A.5 does not include a discovery rule. The trial court in the present case predicted that, upon reconsideration, a majority of this court would now vote to overrule *Montgomery* and adopt the view of the dissenters in that case. This prediction is incorrect. The court adheres to the holding in *Montgomery,* and the trial court thus erred in holding that section 613A.5 includes a discovery rule.

III. *The equal protection challenge.* The applicable equal protection provisions are in United States Constitution Amendment XIV and Iowa Constitution Article I, section 6. The applicable standard for determining the constitutionality of the classification in section 613A.5 is the rational basis test. *Lunday v. Vogelmann,* 213 N.W.2d 904, 907 (Iowa 1973).

In *Lunday,* this court upheld section 613A.5 in the face of one of the two equal protection arguments advanced by plaintiffs in the present case. The statute imposes a stricter notice requirement on victims of government torts than subsections 614.1(2) and (9) impose on victims of private torts. Correlatively section 613A.5 provides greater protection to government tortfeasors than the other provisions give to private tortfeasors. The court in *Lunday* held that the plaintiff did not meet his burden to negate the existence of a rational basis for this differential treatment. *See* 213 N.W.2d at 907–08. Despite another trial court prediction to the contrary, we reach the same conclusion in this case. The *Lunday* decision is supported by the greater weight of authority from other jurisdictions. *See Budahl v. Gordon and David Associates,* 287 N.W.2d 489, 492 (S.D.1980). We believe *Lunday's* reasoning is sound and adhere to its holding.

Plaintiffs, however, raise a second equal protection argument in the present case. They point to the disparate treatment of tort victims and tortfeasors based on whether the claim is against the state or a municipality. They contend there is no rational basis for having a more stringent limitations period for actions against county doctors than for actions against state doctors.

The limitations period for actions against state doctors is established in section 25A.13, which provides:

Every claim and suit permitted under this chapter shall be forever barred, unless within two years after such claim accrued, the claim is made in writing to the state appeal board under this chapter. The time to begin a suit under this chapter shall be extended for a period of six months from the date of mailing of notice to the claimant by the state appeal board as to the final disposition of the claim or from the date of withdrawal of the claim from the state appeal board under section 25A.5, if the time to begin suit would otherwise expire before the end of such period.

If a claim is made or filed under any other law of this state and a determination is made by a state agency or court that this chapter provides the exclusive remedy for the claim, the time to make a claim and to begin a suit under this chapter shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by a state agency, if the time to make the claim and to begin the suit under this chapter would otherwise expire before the end of such period. The time to begin a suit under this chapter may be further extended as provided in the preceding paragraph.

This section is the only statute of limitations applicable to claims as defined in this chapter.

Thus section 25A.13 allows a claim to be initiated within two years after it accrues without requiring notice of claim to the state within 60 days as a condition precedent. Moreover, the statute starts the claim period with the time the claim "accrued." As noted in *Montgomery,* courts often hold that a claim does not accrue until it is discovered. *See* 278 N.W.2d at 914–17.

We will assume, without deciding, that the discovery rule is incorporated in section 25A.13.

■ This means, for purposes of analysis, that the victim of a state doctor's tort has two years from the time of discovery of injury to initiate the claim process. In contrast, the victim of a county doctor's tort has only six months to bring suit unless notice of claim was given to the county within 60 days of the occurrence of the injury. If notice was given, the claimant has two years from the occurrence to bring suit, and the discovery rule does not apply. This puts victims and tortfeasors in different classifications depending on whether the doctor was employed by the state or the county.

Despite home rule, counties operate under greater fiscal constraints than the state does. Their main source of revenue is the property tax. *See* § 331.424. The property tax levy is subject to a statutory ceiling. § 331.422. Strict time lines are established in the Local Budget Law. *See* ch. 24. In contrast, the General Assembly is free to raise revenue from a number of sources, and its procedure under chapter 25A enables it to appropriate funds as necessary, after the fact, to pay claims.

This court has previously noted the special problems encountered by Iowa municipalities in formulating and implementing budgets. *See City of Des Moines v. Public Employment Relations Board,* 275 N.W.2d 753, 761–62 (Iowa 1979). Budgetary considerations were noted in *Lunday* as supporting the notice requirement of section 613A.5. *See* 213 N.W.2d at 907–08. Other courts have also given weight to this factor in upholding similar notice requirements. *See Oquendo v. Insurance Co. of Puerto Rico,* 388 F.Supp. 1030, 1035 (D.P.R.1974); *Panko v. County of Cook,* 42 Ill.App.3d 912, 916, 1 Ill.Dec. 577, 581, 356 N.E.2d 859, 863 (1976); *Budahl v. Gordon and David Associates,* 287 N.W.2d 489, 492 (S.D.1980).

The same reasoning led the New Mexico Supreme Court to uphold differential treatment of victims and tortfeasors in analogous facts in *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977). The court said:

> In this state, cities are clearly limited in their expenditures. [citations]. The ability of cities to raise money to meet such extraordinary expense is also restricted.
>
> Therefore, it appears that some rational basis does exist for limiting the time period in which a suit may be brought against a city. This determination is sufficient to overcome respondents' contention that [the limitations statute] is unconstitutional.

*Id.* at 790, 568 P.2d at 1236. Other courts have reached the same conclusion. *See Harris County v. Dowlearn,* 489 S.W.2d 140, 145–46 (Tex.Civ.App.1972); *Crowder v. Salt Lake County,* 552 P.2d 646, 647–48 (Utah 1976). In two cases, courts have upheld statutes granting immunity at one level of government while denying it at another. *See Aubertin v. Board of County Commissioners of Woodson County, Kansas,* 588 F.2d 781, 785 (10th Cir.1978) (immunity for county but not city); *Brown v. Wichita State University,* 219 Kan. 2, 14–21, 547 P.2d 1015, 1025–30 (immunity for state but not city), *appeal dismissed sub nom. Bruce v. Wichita State University,* 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976). We find these cases persuasive authority for upholding the differential treatment in the present case.

A case that holds to the contrary is *Jenkins v. State,* 85 Wash.2d 883, 891, 540 P.2d 1363, 1368 (1975). The *Jenkins* court, however, did not consider the grounds for classification advanced in *Atencio* that we find to be rational. This court relied on *Jenkins* in *Gleason v. City of Davenport,* 275 N.W.2d 431, 435–36 (Iowa 1979), as authority for striking on equal protection grounds a 30-day notice requirement for claims against special charter cities while a 60-day notice requirement applied to claims against other cities. The governmental entities thus were at the same level in *Gleason* and the factors that distinguish local from state government were not involved. We decline

to apply *Jenkins* or extend *Gleason* to the present situation.

We find no merit in either facet of plaintiffs' equal protection argument.

Because we disagree with the trial court on each ground of its ruling, we hold that the court erred in overruling the doctors' motion to dismiss.

REVERSED.

All Justices concur except REYNOLDSON, C.J., and LARSON, J., who dissent.

REYNOLDSON, Chief Justice (dissenting).

I respectfully dissent from division II of the majority opinion for the same reasons expressed in division II of Justice Larson's dissent in *Montgomery v. Polk County,* 278 N.W.2d 911, 920 (Iowa 1979).

I dissent from division III for all of the reasons assigned in my dissent in *Lunday v. Vogelmann,* 213 N.W.2d 904, 908 (Iowa 1973). Although the majority indicates Iowa's *Lunday* decision is supported by the greater weight of authority, a number of recent decisions have rejected the rationale relied on in that opinion. *Reich v. State Highway Department,* 386 Mich. 617, 623–24, 194 N.W.2d 700, 702 (1972); *Kossak v. Stalling,* 277 N.W.2d 30, 34–35 (Minn.1979) (statutory requirement that suit against city be commenced within one year after notice denied equal protection where the city had actual notice); *Turner v. Staggs,* 89 Nev. 230, 235, 510 P.2d 879, 882–83, *cert. denied,* 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973); *Hunter v. North Mason High School,* 85 Wash.2d 810, 818–19, 539 P.2d 845, 850 (1975); *O'Neil v. City of Parkersburg,* 237 S.E.2d 504, 508–09 (W.Va. 1977).

I would hold section 613A.5 deprived these plaintiffs of equal protection, and affirm.

LARSON, J., joins this dissent.