# IN THE SUPREME COURT OF IOWA

No. 13–0405

Filed June 20, 2014

**JANE DOE,**

Appellee,

vs.

**NEW LONDON COMMUNITY SCHOOL DISTRICT,**

Appellant,

GINA SISK,

Defendant.

---

Appeal from the Iowa District Court for Henry County, Cynthia H. Danielson, Judge.

A school district brings an interlocutory appeal from the district court's denial of its motion for summary judgment based on the statute of limitations. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Steven E. Ort of Bell, Ort & Liechty, New London, for appellant New London Community School District.

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellee.

Alfredo G. Parrish and Tammy M. Westhoff Gentry of Parrish Kruidenier Dunn Boles Gribble Gentry & Fisher, L.L.P., Des Moines, for defendant Gina Sisk.

**MANSFIELD, Justice.**

This case requires us to decide the timeliness of a lawsuit filed against a school district in 2012 alleging past sexual abuse. The abuse was alleged to have occurred when the plaintiff was a high school student in the early 2000s. The alleged abuser was a teacher who also served as the plaintiff's track coach.

The school district moved for summary judgment based on the statute of limitations in the pre-2007 Iowa Municipal Tort Claims Act. The district court denied the motion. We granted the district's application for interlocutory appeal. We now reverse the district court, holding: (1) the common law discovery rule does not apply to claims under the pre-2007 Iowa Municipal Tort Claims Act; (2) Iowa Code section 614.8A (2005) does not apply to individuals who were fourteen years or older when the alleged sexual abuse occurred; and (3) the absence of a discovery rule in the pre-2007 Iowa Municipal Tort Claims Act does not violate article I, section 6 of the Iowa Constitution.

## I. Facts and Procedural Background.

Like the parties and the district court, we assume the truth of plaintiff's factual allegations for purposes of our review.

Plaintiff Jane Doe attended school in the New London Community School District (the District). When Doe started eighth grade in August 1999, defendant Gina Sisk began her first year as an employee of the District and taught Doe's eighth-grade science class. Doe participated in track and field beginning in March of 2000; Sisk was her coach.

During the summer of 2000, Doe was fourteen years old and between the eighth and ninth grades. At that time, Sisk began to engage in improper sexual conduct toward her. The starting point was when Sisk drove Doe and another female student to Lincoln, Nebraska, to

participate in a regional track meet. While there, Sisk, Doe, and the other student shared a hotel room. Sisk purchased and viewed a pornographic video in the hotel room shared with Doe and the other student. Sisk and Doe then slept together in the same hotel room bed, and Sisk fondled Doe's genitals.

Following the encounter in the hotel room in July 2000, Sisk regularly initiated sexual contact with Doe. The acts included kissing, fondling, digital penetration, and oral sex. Sisk instructed Doe to lie to her parents and others so Sisk could gain access to Doe. Sisk also arranged subsequent liaisons with Doe at hotels and motels.

The sexual activity continued during the 2000–2001 school year and thereafter. Doe feared for her safety at times during the relationship with Sisk. During one argument, Sisk pushed Doe into a locker and later called and harassed her. On another occasion, Sisk held a knife to Doe's throat and attempted to smother her with a pillow after Doe threatened to reveal the relationship. In addition to threatening violence, Sisk also threatened Doe's position on the track team. During the summer of 2002 when the relationship temporarily ceased, Sisk repeatedly drove by Doe's home and called her cell phone.

In the spring of 2003, Doe was called to the principal's office at the high school and asked whether she was involved in a relationship with Sisk. Sisk had instructed Doe to deny any relationship, and Doe did so "out of fear of Defendant Sisk and [a] desire to protect her position on the track team." Doe was not further questioned by the school about Sisk or any relationship with her.

In May of 2003, as her junior year was ending, Doe decided to enlist in the United States Coast Guard. She "wanted to escape Defendant Sisk's control and knew that this would not be possible if she

attended a local college to run track." Even after Doe joined the Coast Guard upon her high school graduation in 2004, Sisk continued to contact Doe by sending her letters and visiting her in Florida and Tennessee. Doe finally ceased all contact with Sisk in 2006. In July 2008, Doe left active duty with the Coast Guard.

In 2011, Doe sought the services of a counselor due to issues with anxiety and depression. It was through counseling that Doe claims she "discovered a causal link between the sexual abuse she endured as an adolescent, at the hands of Defendant Sisk, and the emotional problems she had been experiencing for many years."

On March 2, 2012, Doe filed a petition against Sisk and the District. She asserted claims of assault, battery, and intentional infliction of emotional distress against Sisk. Against the District, she alleged claims of respondeat superior, negligent hiring, negligent retention, negligent supervision, and negligent infliction of emotional distress. Against both defendants, she asserted claims of negligence and violations under the Iowa Constitution. Sisk denied Doe's allegations about the sexual relationship. The District also denied any wrongdoing. Both the District and Sisk filed motions for summary judgment arguing that Doe's claims were barred by the statute of limitations in the Iowa Municipal Tort Claims Act (IMTCA). *See* Iowa Code § 670.5 (2005).[1] Doe resisted and maintained her claims were timely filed because of the discovery rule. She alleged that the IMTCA incorporates a common law discovery rule allowing claims to be brought within two years of the date

---

[1]Section 670.5 of the IMTCA was amended by the legislature in 2007. *See* 2007 Iowa Acts ch. 110, § 5. However, all parties agree that the pre-2007 language governs here because the conduct in question occurred before 2007. *Id.* § 6. ("This Act applies to all complaints, claims, and actions arising out of an alleged death, loss, or injury occurring on or after July 1, 2007.").

when the injury and its cause reasonably could have been discovered. *See, e.g., Frideres v. Schiltz,* 540 N.W.2d 261, 269 (Iowa 1995) ("The common law discovery rule requires that the plaintiff know or in the exercise of reasonable care should have known both the fact of the injury and its cause."). Alternatively, if the IMTCA did not include a discovery rule, she alleged that this circumstance violated the equal protection clause in the Iowa Constitution. *See* Iowa Const. art. I, § 6.

On February 18, 2013, the district court denied the defendants' motions for summary judgment and held that "at least two genuine issues of material fact" were in dispute. "First, Doe and the Defendants disagree as to whether or not Doe provided [the District] with notice of her claim before the commencement of this action . . . ." Second, according to the district court, "the parties disagree, and the Court believes that the record is not developed to the point to resolve the question of when Doe's injuries occurred." The district court went on to state that the defendants had not "satisfied [their] burden of production to demonstrate that no genuine issue of material fact exists regarding the application of the appropriate statute of limitations to [Doe]'s claim."

Both Sisk and the District filed applications for interlocutory appeal, which we granted. While the appeal was pending, Sisk was dismissed from the lawsuit by stipulation. The District continued to pursue its appeal.

## II. Standard of Review.

We review the district court's ruling on a motion for summary judgment for correction of errors of law. *Thomas v. Gavin,* 838 N.W.2d 518, 521 (Iowa 2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). We view the summary judgment record in the light most favorable to the nonmoving party. *Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013). We review constitutional issues de novo. *Lewis v. Jaeger,* 818 N.W.2d 165, 175 (Iowa 2012).

### III. Analysis.

The district court denied the summary judgment motions after finding the presence of genuine issues of material fact. However, the parties now essentially agree that the dispositive issue is one of *law*— whether a discovery rule is available to the plaintiff. If it is not, then plaintiff's claims are time-barred. Our conclusion that the fate of this lawsuit turns on the availability of a discovery rule appears to be inescapable. No injury is alleged to have occurred after 2006, and no notice is alleged to have been given after March 2003, yet Doe did not file suit until March 2012. Of course, we exclude the time period from July 2004 until July 2008 when Doe was in the Coast Guard. *See* 50 App. U.S.C.A. § 526(a) (West Supp. 2013) (tolling of statutes of limitation during military service). Still, more than two years elapsed from July 2008, when Doe left active duty, until March 2012, when she filed suit.

The IMTCA has a two-year statute of limitations, *see* Iowa Code § 670.5, and no party disputes the applicability of the IMTCA to the present case. Sisk was employed by the District when the alleged abuse occurred. *See id.* § 670.1(2) ("*Municipality*" means city, county, township, school district, and any other unit of local government . . . .); *id.* § 670.2 ("[E]very municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.").

**A. Does the IMTCA Incorporate a Common Law Discovery Rule?** At the time of the alleged misconduct, the IMTCA provided as follows:

> Every person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 670.2 or section 670.8 or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state time or place or circumstances or the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by the injury from giving such notice.

Iowa Code § 670.5.

In 1986, we held that the foregoing six-month limitation period for persons who had failed to give notice before suing a municipality violated the Equal Protection Clauses of both the United States and Iowa Constitutions. *See Miller v. Boone Cnty. Hosp.*, 394 N.W.2d 776, 778–81 (Iowa 1986). While plaintiffs proceeding under the IMTCA without giving notice had only six months to bring suit, persons with claims against private parties were allowed two years to file suit. *Id.* at 779 & n.4. We ended our opinion with a statement that "Iowa Code chapter 614 [the general limitations of actions chapter] is the applicable statute of limitations for all actions arising under chapter 613A [now 670]." *Id.* at 781.

Yet several years later, in *Clark v. Miller*, we clarified that we had not intended to declare the entirety of what is now section 670.5 unconstitutional, *only* the six-month time limit. *See* 503 N.W.2d 422, 425 (Iowa 1993). Thus, we held that if timely notice were given, as provided in the statute, the claimant could have a full two years from the giving of notice to file suit, even though this resulted in a different limitations period than was available against a private party. *Id.* This discrepancy between the IMTCA and general tort law did not violate equal protection guarantees. *Id.*

We have separately addressed the question whether a discovery rule is available under the pre-2007 IMTCA on multiple occasions and consistently held it is not. In *Montgomery v. Polk County*, the plaintiff sued the county for loss of her bail money, alleging the clerk of court had paid out the money to an unauthorized individual. *See* 278 N.W.2d 911, 912–13 (Iowa 1979). The plaintiff's filing missed the IMTCA statutory deadlines if they were computed from the date the clerk paid out the bail money. *Id.* However, the plaintiff alleged the discovery rule extended her deadlines because she had been unaware of the clerk's actions. *Id.* at 913–14. We disagreed. We found that Iowa Code section 613A.5 (now section 670.5) was a "statute of creation" where the deadlines for giving notice or filing suit were triggered by the "injury." *Id.* at 917. We emphasized that the IMTCA contains no term like "accrues" to give the statute "elasticity" for the court to consider "when a cause of action 'accrues.'" *Id.* at 914; *cf.* Iowa Code § 614.1 ("Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared . . . ."). Because the IMTCA required an injured person to "'commence an action therefor [i.e., for the injury] within six months,'" we concluded the

legislature did not intend to extend the time for filing claims except in the situations elsewhere covered by the statute, such as a person incapacitated by injury. 278 N.W.2d at 914, 918 (quoting Iowa Code § 613A.5 (now § 670.5)). Hence, we held the discovery rule was not applicable to claims brought under the IMTCA. *Id.*

Four years later, we revisited this issue in another case because the district court had predicted that "upon reconsideration, a majority of this court would now vote to overrule *Montgomery*" on the applicability of the discovery rule to claims filed under the IMTCA. *Farnum v. G.D. Searle & Co.*, 339 N.W.2d 392, 396 (Iowa 1983). Yet instead of overruling *Montgomery*, we reaffirmed that the court "adheres to the holding in *Montgomery*." *Id.* Thus, in our view, the trial court "erred in holding that [the IMTCA] includes a discovery rule." *Id.*

We stuck to this position in two other pre-*Miller* cases. *See Uchtorff v. Dahlin*, 363 N.W.2d 264, 266 (Iowa 1985) ("Though Uchtorff urges us to overrule *Farnum* and *Montgomery*, the majority of this court is not persuaded to do so."); *Orr v. City of Knoxville*, 346 N.W.2d 507, 510 (Iowa 1984) (finding "no reason to overrule" *Farnum*'s decision on the discovery rule).

Furthermore, our interpretation of this aspect of the IMTCA did not change after *Miller*. In *Callahan v. State*, decided four years after *Miller*, we reiterated that *Montgomery* held "the discovery rule did not apply to the statute of limitations of . . . Iowa Code section 613A.5 [now section 670.5], noting that the time limitation of that section did not commence on 'accrual' of the claim." 464 N.W.2d 268, 270 (Iowa 1990). We contrasted the IMTCA's limitations provision with that in the Iowa Tort Claims Act. *Id.* Only the latter, we explained, "begin[s] the period of limitations with the 'accrual' of the claim." *Id.*; *see also Vachon v. State*,

514 N.W.2d 442, 445 (Iowa 1994) (reaffirming *Callahan* and noting that "[w]here a statute of limitations uses the term 'accrued' with regard to when the statute begins to run, the discovery rule applies").

In *Perkins ex rel. Perkins v. Dallas-Center Grimes Community School District*, we resolved a different question under the IMTCA, holding that the tolling provision for minors in Iowa Code section 614.8 did not apply to IMTCA claims. *See* 727 N.W.2d 377, 380–81 (Iowa 2007). Yet in the course of our opinion, we emphasized that "[t]he Iowa legislature has never indicated any intent to incorporate a tolling provision [in section 670.5]." *Id.* at 381. *Miller*, we explained, only affected "the statute's requirement of filing suit in six months or giving notice within sixty days." *Id.* at 380.

We reiterated the *Perkins* holding in *Rucker v. Humboldt Community School District*, where we highlighted that "our *Miller* opinion struck down only the provision requiring commencement of an action within six months if notice is not given within sixty days." 737 N.W.2d 292, 294 (Iowa 2007). Although both *Perkins* and *Rucker* involved statutory rather than common law tolling, they confirmed that *Miller* did not affect any aspect of the IMTCA other than the six-month deadline for filing suit where no notice had been given and thus did not alter the holdings in *Montgomery*, *Farnum*, and *Uchtorff*.

As we have noted, the general assembly amended the IMTCA's limitations provision in 2007. 2007 Iowa Acts ch. 110, § 5. Thus, the new version reads:

> Except as provided in section 614.8, a person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss, or injury within the scope of section 670.2 or section 670.8 or under common law shall commence an

action therefor within two years after the alleged wrongful death, loss, or injury.

Iowa Code § 670.5 (Supp. 2007). The Legislative Services Agency's 2007 Summary of Legislation indicates that the new language, expressly requiring the action to be commenced within two years of the "injury," was believed to be a continuation of the old:

> The Act eliminates a portion of Code Section 670.5, formerly Code Section 613A.5, requiring a person claiming damages from any municipality on account of any wrongful death, loss, or injury to commence an action within six months after the wrongful death, loss, or injury. This six month statute of limitation period was declared unconstitutional by the Iowa Supreme Court in *Miller v. Boone County Hospital*, 394 N.W.2d 776 (Iowa 1986). The Act retains the remaining portion of Code Section 670.5 that allows a person to commence a tort action against any municipality on account of any wrongful death, loss, or injury within two years after the date of the wrongful death, loss, or injury.

Legis. Servs. Agency, *2007 Summary of Legislation*, S.F. 384—Limitations of Civil Rights Claims and Civil Lawsuits—Minors, Mentally Ill Person, and State and Local Government (Iowa 2007), *available at* https://www.legis.iowa.gov/search?fq=&q=2007+Summary+of+Legislation&start=0&sort=score+desc&rows=10&fq=-status%3AReserved.

In sum, on several occasions, we have discussed the pre-2007 version of section 670.5 and said it did not incorporate a common law discovery rule. *See, e.g., Callahan*, 464 N.W.2d at 270; *Uchtorff*, 363 N.W.2d at 266; *Farnum*, 339 N.W.2d at 396; *Montgomery*, 278 N.W.2d at 918. We reached this conclusion based upon the absence of language like "accrue" or "accrual" in the IMTCA to suggest that something other than the date of injury might be the starting point for the statute of limitations. *See Callahan*, 464 N.W.2d at 270; *Montgomery*, 278 N.W.2d at 918. Especially given the further fact that section 670.5 has now been

legislatively rewritten, we see no reason to disturb our longstanding precedent in this area.

**B. Does the Special Limitations Period for Child Sexual Abuse Claims in Iowa Code Section 614.8A Apply to IMTCA Claims?** Doe alternatively argues that she is entitled to the benefit of the special statute of limitations set forth in section 614.8A for child sexual abuse claims. *See* Iowa Code § 614.8A (2005). That section provides:

> An action for damages for injury suffered as a result of sexual abuse which occurred when the injured person was a child, but not discovered until after the injured person is of the age of majority, shall be brought within four years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the sexual abuse.

*Id.* The District maintains that section 614.8A is not available to Doe because she was not a child, as that term is used in the law, at the time of the alleged abuse.

Section 614.8A was enacted in 1990. *See* 1990 Iowa Acts ch. 1241, § 2. The underlying legislation consisted of two sections. The first section amended an existing law that limited evidence of the alleged victim's prior sexual conduct in civil actions relating to sexual abuse. *Id.* § 1 (codified at Iowa Code § 668.15 (1991)). The second section was the special limitations provision quoted above. *Id.* § 2 (codified at Iowa Code § 614.8A (1991)).

Four years later, in *Doe v. Cherwitz*, we were called upon to answer questions certified to us by a federal district court. *See* 518 N.W.2d 362, 363 (Iowa 1994). One question dealt with the meaning of child in section 614.8A. *Id.* In particular, was an eighteen-year-old a child if "the age of majority" at the time was nineteen years? *Id.*

We declined to hold that "child" in section 614.8A meant someone who had not attained the age of majority. *Id.* at 363–64. Rather, we noted that the first section of the 1990 legislation referred to sexual abuse "as defined in section 709.1," that section 709.1 in turn defined "sexual abuse" to include a sex act with a "child," and that a "child" was defined in the criminal code as a person under the age of fourteen. *Id.* We also acknowledged the defendants' argument that the legislature had used the word "child" in the second section of the legislation rather than "minor." *Id.* at 363.[2] We decided that the first section of the legislation "shed[] light" on the meaning of child in the second section and, therefore, for purposes of section 614.8A, a child meant someone under the age of fourteen. *Id.* at 363–64.

Our conclusion that section 614.8A incorporated the criminal code's definition of child was perhaps debatable. One can take the view that, as enacted, the section divided the time period when the injured person "was a child" from the time period when that person "is of the age of majority," without contemplating a gap of years in between. *See* Iowa Code § 614.8A. And while the first section of the 1990 legislation referred to sexual abuse "as defined in section 709.1," the second section did not include a section 709.1 reference, perhaps suggesting that section 709.1 did not govern the meaning of child in section 614.8A. *See id.*[3]

---

[2]The tolling provision in section 614.8 employs the term "minor" and did so when the legislature enacted section 614.8A in 1990. *See* Iowa Code § 614.8 (1989); 1990 Iowa Acts ch. 1241, § 2.

[3]On the other hand, the legislature did use the term "child" rather than the term "minor" in section 614.8A. Because the latter term appeared nearby in Iowa Code section 614.8, the legislature's choice of wording in section 614.8A arguably implied that it meant to draw a distinction between a "child" and a "minor."

However, we have reiterated what we said in *Cherwitz* in two other opinions. Six months after *Cherwitz*, we upheld a verdict in a civil action brought by a daughter against her father for abuse that had occurred in 1987. *See Claus v. Whyle*, 526 N.W.2d 519, 523 (Iowa 1994). In rejecting the father's limitations defense, we cited *Cherwitz* for the proposition that a child had to be under the age of fourteen for purposes of section 614.8A. *Id.* at 524 & n.2. We said, "Being only thirteen years of age on November 7, 1987, Beverly Jo was still a child as contemplated by section 614.8A when the incident occurred." *Id.* at 524.

A year later in *Frideres v. Schiltz*, we again referred briefly to our *Cherwitz* decision concerning the meaning of a child in section 614.8A. *See* 540 N.W.2d 261, 265 (Iowa 1995). We did not suggest the *Cherwitz* decision was flawed or otherwise call it into question. *See id.*

In 1996, in *Borchard v. Anderson*, we squarely reaffirmed *Cherwitz*. *See* 542 N.W.2d 247, 250 (Iowa 1996). There, we ruled that a civil action for infliction of domestic abuse was time-barred and explained,

> The second statutory exemption plaintiff suggests, Iowa Code section 614.8A, is also inapplicable. This section extends the period of time in which a person may file an action for damages for sexual abuse suffered as a child. The term "child" pursuant to this section means "one under the age of fourteen." *Doe v. Cherwitz*, 518 N.W.2d 362, 364 (Iowa 1994); *see also* Iowa Code § 599.1 (stating all minors attain their majority by marriage). Plaintiff was fifteen years old at the time of her marriage to Anderson. Therefore Iowa Code section 614.8A cannot save her claim.

*Id.*

At this point, *Cherwitz* has been followed as the law of this state for twenty years. Good arguments may exist for a different interpretation of section 614.8A, but they are not new arguments that did not exist in 1994. Also, one cannot say that *Cherwitz*'s interpretation of the statute

was merely dictum or a decision rendered in passing; we were answering a certified question directly posed to us by the federal district court.

Hence, we believe that some of the observations we made in another recent statutory interpretation case also apply here:

> [T]he path we follow in this case is one primarily built on the venerable principles of stare decisis and legislative acquiescence. We are slow to depart from stare decisis and only do so under the most cogent circumstances. Moreover, we presume the legislature is aware of our cases that interpret its statutes. When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our interpretation.
>
> . . . .
>
> . . . Overall, we think our legislature would be quite surprised to learn if we decided to reverse course and take a different position under the guise of statutory interpretation. We did our job twenty-seven years ago and will leave it for the legislature to take any different approach. The specific arguments presented by the plaintiffs are not so powerful or obvious that they plainly undermine our prior line of cases.

*Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013) (citations omitted).

Notably, our existing interpretation of section 614.8A does not minimize the harm associated with sexual abuse of minors aged fourteen to seventeen. These persons can still utilize the tolling provisions of section 614.8 as enacted by the legislature; they merely cannot utilize section 614.8A.

Here, Doe had already turned fourteen in the summer of 2000 when the alleged sexual abuse began. She was not a child within the meaning of section 614.8A and therefore cannot use this statute to preserve her claims against the District.[4]

---

[4]Even if we overruled *Cherwitz* and the later decisions that followed it, we would then have to confront another question: Can Iowa Code section 614.8A apply to pre-2007 IMTCA claims? In *Perkins* and *Rucker*, we ruled the tolling provision for minors in

**C. Would Failure to Apply the Discovery Rule Violate Article I, Section 6 of the Iowa Constitution?** Doe's final argument is that failure to apply the discovery rule to her cause of action would violate the Iowa Constitution's equal protection clause. Article I, section 6 of the Iowa Constitution states, "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6. Doe contends that not recognizing a discovery rule for claims under the IMTCA would "treat those injured by municipal employees differently than those injured by private tortfeasors without a rational basis for doing so." Doe thus concedes the proper test to apply in this case is the rational basis test. *See Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 458 (Iowa 2013) ("Because no suspect class or fundamental right is at issue, we apply the rational basis test."); *King v. State*, 818 N.W.2d 1, 25 (Iowa 2012) ("Unless a suspect class or a fundamental right is at issue, equal protection claims are reviewed under the rational basis test."); *Fisher v. McCrary-Rost Clinic, P.C.*, 580 N.W.2d 723, 725 (Iowa 1998) (noting that "statutes of limitation do not implicate or affect fundamental rights").

---

section *614.8* did not apply to pre-2007 IMTCA claims. *Rucker*, 737 N.W.2d at 295; *Perkins*, 727 N.W.2d at 381. In those cases we reasoned that " '[t]he Iowa legislature has never indicated any intent to incorporate a tolling provision in [the pre-2007] chapter 670.' " *Rucker*, 737 N.W.2d at 295 (quoting *Perkins*, 727 N.W.2d at 381).

Finally, the current, post-2007 version of the IMTCA expressly recognizes section 614.8, but not section 614.8A, as an exception to its normal limitations period. *See* Iowa Code § 670.5 (2013) ("*Except as provided in section 614.8*, a person who claims damages from any municipality . . . shall commence an action therefor within two years after the alleged wrongful death, loss, or injury." (Emphasis added.)). Thus, even were we to overrule *Cherwitz* and its progeny and find section 614.8A applicable to claims under the pre-2007 IMTCA, it seems clear that this holding could not apply to claims arising under the current version of the IMTCA.

"The rational basis test is a 'deferential standard,'" and for the purposes of an equal protection claim, "we must determine only whether the classification is 'rationally related to a legitimate governmental interest.'" *Horsfield*, 834 N.W.2d at 458 (citations omitted). "Under a traditional rational basis review, courts are required to accept generalized reasons to support the legislation, even if the fit between the means and end is far from perfect." *Varnum v. Brien*, 763 N.W.2d 862, 879 n.7 (Iowa 2009). As we have said recently regarding the rational basis test,

> A statute or ordinance is presumed constitutional and the challenging party has the burden to negate every reasonable basis that might support the disparate treatment. The City is not required or expected to produce evidence to justify its legislative action. Still, for state constitutional purposes, the government interest must be realistically conceivable. And in the equal protection context, the means chosen to advance that interest cannot be so overinclusive and underinclusive as to be irrational.

*Horsfield*, 834 N.W.2d at 458–59 (citations omitted) (internal quotation marks omitted). In addition, merely favoring one class over another (e.g., municipalities over private tortfeasors or riverboats over racetracks) is not in itself a justification for differential treatment. *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 13 (Iowa 2004). There has to be some independent ground for the different treatment. *Id.*

Upon our review, we believe a rational basis exists for the legislature to place, within reason, greater limits on legal claims against municipalities than on legal claims against private entities. Municipalities have finite resources and a limited ability to raise more resources. *See Messerchmidt v. City of Sioux City*, 654 N.W.2d 879, 882 (Iowa 2002) (discussing the discretionary function immunity for municipalities and noting that it applies where the city may weigh

various competing needs including "limited financial resources"). Claims against municipalities, unlike claims against private entities, are ultimately paid for by residents of those municipalities. For example, in this case, any award against the District would be paid by local taxpayers or by an insurer under a policy purchased by local taxpayers. Insurance rates, in turn, are often affected by claims experience and the risks being covered. Thus, our legislature could reasonably determine that municipalities should bear some responsibility for misconduct committed by their employees and not benefit from absolute sovereign immunity, but the legal responsibility should not extend as far as that of a private entity.

Indeed, this philosophy pervades the IMTCA, which contains numerous exemptions for municipalities that are not available to private tortfeasors. *See* Iowa Code § 670.4(1)–(15) (2005) (listing "[c]laims exempted"); *see also Kulish v. Ellsworth*, 566 N.W.2d 885, 890 (Iowa 1997) (overruling the plaintiff's claim that a city's immunity under the emergency response exemption amounted to an equal protection violation); *Baker v. City of Ottumwa*, 560 N.W.2d 578, 582 (Iowa 1997) (finding no equal protection violation where city was immune from suit under the IMTCA's swimming pool exemption); *Gard v. Little Sioux Intercounty Drainage Dist.*, 521 N.W.2d 696, 699 (Iowa 1994) (finding a rational basis for the immunity of drainage districts but not municipalities from tort claims, given "the limited nature of a drainage district's purposes and powers"). Doe's position, seemingly, would endanger every one of these exemptions, as Doe's counsel effectively acknowledged in oral argument before this court.

In *Farnum*, we decided a question very close to the present one, holding it did not violate the Equal Protection Clause of either the Iowa or

the United States Constitutions for a discovery rule to be available under the Iowa Tort Claims Act but not the IMTCA. 339 N.W.2d at 396–97. We explained, "Despite home rule, counties operate under greater fiscal constraints than the state does. Their main source of revenue is the property tax. The property tax levy is subject to a statutory ceiling." *Id.* at 397 (citations omitted). Similar grounds justify the availability of a discovery rule as to claims against private tortfeasors but not municipalities. We have never overruled *Farnum.*

It is true that in *Miller,* we invalidated the six-month limitations period for claims against municipalities that the legislature had imposed whenever notice was not given within sixty days of the injury. *See* 394 N.W.2d at 780. We considered four possible rational bases for upholding this limit and rejected all four. *Id.* at 779–80. These were: "stale claims," "planning of budgets," "settling of valid claims," and "repair of defective conditions." *Id.* With respect to budget planning, we noted that the legislature contemplated municipalities would purchase liability insurance to protect themselves. *Id.* at 780. Budget planning, however, is not the same issue as limited resources. A municipality may have the ability to avoid a budget surprise through the use of insurance, but this does not mean its resources are without limits. We did not discuss in *Miller* the tight fiscal constraints of municipalities, the factor we had considered dispositive in *Farnum* when we upheld the IMTCA's failure to include a discovery rule.

Furthermore, *Miller* used language that was pointedly critical of the six-month bar. We referred to the six-month bar that applied when no sixty-day notice had been given as "arbitrary treatment" and a "trap for the unwary." *Id.*; *see also id.* at 778 ("To defer to the legislature because it has provided liability for the negligence of the State's political

subdivisions is to say *every* condition imposed, no matter how harsh, may never be questioned.").

Subsequent authority, as we have already noted, clarified the scope of *Miller*. This clarification extended to its constitutional holding. *See Harden v. State*, 434 N.W.2d 881, 885 (Iowa 1989).

In *Harden*, we had to decide whether the Equal Protection Clause of the United States Constitution or of the Iowa Constitution was violated when a minor plaintiff suing under the Iowa Tort Claims Act could not rely on the tolling provision of Iowa Code section 614.8 (extending the time to bring a claim for a plaintiff injured as a minor to one year "from and after the attainment of majority"). *Id.* The plaintiff argued she was "denied equal protection of the law because [the Iowa Tort Claims Act] gives minors injured by the state a two-year statute of limitations, while minors injured by a private party benefit from the tolling provisions of section 614.8." *Id.*

The plaintiff in *Harden* relied heavily on our decision in *Miller*. *Id.* Yet we rejected the plaintiff's claim, stating:

> *Miller* is distinguishable from this case on several grounds. First, [the Iowa Tort Claims Act] establishes a two-year statute of limitations, and not a sixty-day notice requirement. The argument that this two-year statute of limitations is a "trap to the unwary" is much weaker than in the case of the sixty-day notice provision. Also, *Miller* dealt with a municipal government and this case deals with a state government. In *Miller*, we rejected the rationale that a municipal government needed a sixty-day notice provision in order to plan budgets, prevent stale claims, or settle valid claims. These arguments are more rational when viewed in the context of a state government placing a two-year limitation of action on claims against the state. The restrictive notice requirement is considerably different than the requirement that a claim be made within two years after the claim accrues.

*Id.* at 885–86.

*Harden* thus indicates that the presence of a "trap for the unwary" drove the decision in *Miller* and that the legislature does not have a general obligation to give litigants suing government entities the benefit of the same limitations rules as litigants suing private parties. *See id.* In the present case, while we do not at all deny the seriousness of Doe's allegations, we are not talking about a legislative trap for the unwary.

Our view is consistent with the holdings of other courts that the legislature may establish different limitations rules for municipal or state defendants as opposed to private defendants.

> Legislatures may limit the time within which actions against municipal corporations can be brought. Frequently, legislatures enact statutes prescribing periods of limitation, which may be for a shorter period than that provided in the general limitations statute.

17 Eugene McQuillin, *The Law of Municipal Corporations* § 49:8, 260–63 (3d ed. 2014 rev. vol.); *see, e.g., Day v. Mem'l Hosp. of Guymon*, 844 F.2d 728, 732 (10th Cir. 1988) (applying Oklahoma law and finding no equal protection violation under the Oklahoma Constitution in a one-year notice provision applicable to governmental tort claims but not to private tort claims); *Large v. City of Birmingham*, 547 So. 2d 457, 458 (Ala. 1989) (noting a provision that required a plaintiff to provide a municipality with notice of any tort claims against it within six months of accrual was not in violation of constitutional guaranties of equal protection); *Sadler v. New Castle County*, 524 A.2d 18, 27–28 (Del. Super. Ct. 1987) (upholding notice provision that operated as a special one-year statute of limitations and observing that "[t]he Court is satisfied that the differences between governmental and nongovernmental tortfeasors warrant[] specialized treatment where the City of Wilmington may incur liability for tortious conduct"); *Johnson v. Md. State Police*, 628 A.2d 162, 166–67 & n.7 (Md.

1993) (noting a "majority of courts . . . have held that notice of claim requirements under the Tort Claims Acts do not violate equal protection principles" and compiling cases); *Rowland v. Washtenaw Cnty. Rd. Comm'n*, 731 N.W.2d 41, 52 n.9 (Mich. 2007) (noting, while examining a 120-day notice provision, that "the vast majority of jurisdictions that have considered such a constitutional challenge ha[ve] concluded that notice-of-claim and statute-of-limitations rules placed on persons bringing tort actions against governmental entities are rationally related to reasonable legislative purposes and thus do not violate equal protection" and compiling cases); *Findley v. City of Kansas City*, 782 S.W.2d 393, 397 (Mo. 1990) (en banc) (finding a number of legitimate legislative concerns justified a notice provision that required persons injured by municipal tortfeasors to notify the mayor of a municipality within ninety days of their accident or lose their ability to seek damages and holding the provision did not violate equal protection); *Willis v. City of Lincoln*, 441 N.W.2d 846, 851–54 (Neb. 1989) (rejecting argument that one-year notice of claim deadline in the Political Subdivisions Tort Claims Act violated the United States or the Nebraska Constitution, commenting that it "may provide the political subdivision with an early opportunity to remedy a situation dangerous to the public," and adding that "those concerns are particularly compelling in reference to claims against political subdivisions, whose services are frequently essential to the public safety and welfare"); *Espanola Hous. Auth. v. Atencio*, 568 P.2d 1233, 1235–36 (N.M. 1977) (finding a city's limited financial expenditures and restricted ability to raise money provided a rational basis to support a shortened statute of limitations against government entities); *Powell v. N.M. State Highway & Transp. Dep't*, 872 P.2d 388, 394 (N.M. Ct. App. 1994) ("A majority of states that have considered [statutes requiring the

giving of notice to a governmental entity as a condition of filing suit against governmental bodies] have upheld such statutes against challenges asserting that notice requirements violate constitutional equal protection provisions.") (compiling cases); *Univ. of Tex. Med. Branch at Galveston v. Greenhouse*, 889 S.W.2d 427, 432 (Tex. App. 1994) (noting a discovery rule was not applicable to a six-month notice provision and rejecting a constitutional challenge to that provision).

We recognize some courts have determined there is no rational basis to support different classifications for statute of limitations rules involving governmental entities. But the facts of these cases indicate that most—if not all of them—can be viewed as special cases, like *Miller*, where the separate limitations rule for the governmental entity appeared to be particularly arbitrary. *See, e.g.*, *Crandall v. City of Birmingham*, 442 So. 2d 77, 79 (Ala. 1983) (per curiam) (finding no rational basis for a ninety-day limitations period for claims against state's largest city when claims against all other municipalities were subject to a 180-day limitations period); *Silva v. City & County of Honolulu*, 165 P.3d 247, 258–59 (Haw. 2007) (distinguishing *Farnum* and finding no rational basis for a six-month limitations period for claims against a county as opposed to a two-year limitations period for claims against the state given that the legislature had recently eliminated the disparity and given that the record did not show Hawaiian counties had the same limits on raising funds as Iowa counties).

## IV. Conclusion.

For the foregoing reasons, we find the common law discovery rule does not apply to actions under the pre-2007 IMTCA, the limitations provision in Iowa Code section 614.8A is not applicable to this case, and the absence of a common law discovery rule in the pre-2007 IMTCA does

not violate the Iowa Constitution's equal protection clause. Therefore, we reverse the district court's denial of the District's motion for summary judgment and remand the case with instructions that the district court enter summary judgment dismissing Doe's petition.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except Wiggins, Hecht and Appel, JJ. who dissent.

**WIGGINS, Justice (dissenting).**

I dissent. I agree with the court that we have previously defined "child" in Iowa Code section 614.8A to mean a person under fourteen years old. *Doe v. Cherwitz,* 518 N.W.2d 362, 364 (Iowa 1994). I also acknowledge that under the principles of stare decisis, we are obligated to follow prior precedent and should not overturn a prior decision merely because we may interpret the statute differently than our predecessors. *State v. Bruce,* 795 N.W.2d 1, 3 (Iowa 2011). However, it is our obligation to revisit a prior decision of our court if we conclude the previous decision is unsound. *Id.* I believe our prior interpretation of section 614.8A is unsound and needs revisiting. Before doing so, it is first necessary to comment on our prior decisions on this statute.

As the court points out, we first decided this issue in 1994. *See Cherwitz,* 518 N.W.2d at 364. There, we contemplated the entire amendment and concluded the word "child" in section 614.8A should be defined as it is defined in section 702.5 of the criminal code. *Id.* At the time of the *Cherwitz* decision, this court sat in panels. Although the panel decided *Cherwitz* unanimously, we did not make the decision by deliberating as a whole.

Two months later, another five-member panel of the court cited to *Cherwitz. See Claus v. Whyle,* 526 N.W.2d 519, 524 (Iowa 1994). This panel included three members of the *Cherwitz* panel. *Id.* at 520. In *Claus,* the plaintiff was thirteen years old at the time of the alleged abuse. *Id.* at 524. Thus, the court held the statute of limitations did not bar her cause of action because she was under the age of fourteen at the time of her alleged sexual abuse. *Id.* The *Claus* case did nothing to further or reaffirm our interpretation of section 614.8A from *Cherwitz*

because a reexamination of our prior interpretation was not necessary to decide the statute of limitations did not bar the plaintiff's cause of action.

Finally, in 1996 the same panel of judges who decided *Cherwitz* held section 614A.8 did not apply to a fifteen year old. *Borchard v. Anderson*, 542 N.W.2d 247, 248, 250 (Iowa 1996). The panel reached this conclusion without any further analysis. *See id.* at 250. Additionally, there is no indication the plaintiff asked the court to reconsider its decision in *Cherwitz. See id.* We have not revisited our interpretation of section 614.8A for almost twenty years.

Turning to the merits, I believe we wrongly decided the interpretation of section 614.8A in *Cherwitz.* The house file adopting section 614.8A had two sections. It provided:

Section 1. Section 668.15, Code Supplement 1989, is amended to read as follows:

668.15 DAMAGES RESULTING FROM SEXUAL ABUSE – EVIDENCE.

1. In a civil action alleging conduct which constitutes sexual abuse, as defined in section 709.1, sexual assault, or sexual harassment, a party seeking discovery of information concerning the plaintiff's sexual conduct with persons other than the person who committed the alleged act of sexual abuse, as defined in section 709.1, sexual assault, or sexual harassment, must establish specific facts showing good cause for that discovery, and that the information sought is relevant to the subject matter of the action and reasonably calculated to lead in the discovery of admissible evidence.

2. In an action against a person accused of sexual abuse, as defined in section 709.1, sexual assault, or sexual harassment, by an alleged victim of the sexual abuse, sexual assault, or sexual harassment, for damages arising from an injury resulting from the ~~act of sexual abuse~~ alleged conduct, evidence concerning the past sexual behavior of the alleged victim is not admissible.

Sec. 2. NEW SECTION. 614.8A DAMAGES FOR CHILD SEXUAL ABUSE – TIME LIMITATION.

An action for damages for injury suffered as a result of sexual abuse which occurred when the injured person was a child, but not discovered until after the injured person is of the age of majority, shall be brought within four years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the sexual abuse.

1990 Iowa Acts ch. 1241. In the first section, the underlined language is new language, while the language with the strikethrough is language stricken from the prior statute.

A close examination of this amendment reveals a number of factors indicating *Cherwitz* was wrongly decided. First, the first section of House File 2268 is a discovery and evidentiary rule; it is not substantive law. The second section is substantive law. For this reason, the legislature's reference to section 709.1 in the first section's procedural rule does not mean the legislature necessarily incorporated section 709.1 in the second section's substantive rule. Moreover, the legislature chose to cite specifically to section 709.1 in the first section, but failed to do so in the second section. This leads me to believe the legislature never intended to apply the definition of child in section 709.1 to the second section. The legislature could have made its intent clear by referencing section 709.1 in the second section, but did not do so.

Further, the panel in *Cherwitz* ignored a guiding principle of interpretation when it decided *Cherwitz*. We have said a guiding principle of interpretation when we interpret a statute of limitations is that "[c]ourts do not favor statutes of limitations." *Welp v. Iowa Dep't of Revenue*, 333 N.W.2d 481, 484 (Iowa 1983). When we can interpret a limitations statute in two possible ways, we prefer and apply the interpretation that gives the litigant the longer period of time to seek relief. *Id.*

The common meaning of child is "[a] person under the age of majority." *Black's Law Dictionary* 271 (9th ed. 2009). Our Code defines child in the same way when defining to whom our child protection laws apply. *See* Iowa Code § 232.68(1) (2005) (" '*Child*' means any person under the age of eighteen years."); *id.* § 234.1(2) (" '*Child*' means either a person less than eighteen years of age or a person eighteen or nineteen years of age" who meets certain conditions); *id.* § 235.1(2) ("*Child*" means the same as "defined in section 234.1."); *id.* § 252B.1(2) (" '*Child*' . . . means a child actually or apparently under eighteen years of age . . . ."). When the legislature failed to include the section 709.1 definition of child in section 614.8A, we should apply the common meaning of child in interpreting section 614.8A. By giving child its common meaning, we are interpreting section 614.8A in a way that gives the litigant the longer period to seek relief.

Lastly, the legislature's inaction since our decision does not prevent us from reexamining our position. As we have previously stated:

> It is, of course, the role of the legislature to write statutes, and it is our role to interpret them based on their application in the course of litigation. Moreover, the legislature can rewrite a statute to reflect its intent when it does not believe our interpretation in a particular case has accomplished this goal. Yet, these general principles of separation of powers and fundamental duties do not totally absolve us from our continued responsibility to interpret applicable statutes in each case and, more importantly, to revisit our past interpretations if we are convinced they have not clearly captured the intent of our legislature. We adhere to precedent, but also remain committed to clarifying the law as we work with our precedent. When our interpretation of a statute has created problems in the application of the statute to subsequent cases, we should be willing to reexamine our precedent to see if our understanding of the legislative intent can be better articulated.

*Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 447 (Iowa 2008). Although stare decisis is important to maintain the rule of law, we should not use stare decisis to maintain a clearly erroneous statutory interpretation just because we used that interpretation in the past. *Kersten Co., Inc. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121 (Iowa 1973).

Thus, I would affirm the judgment of the district court and allow this matter to proceed to trial.

Hecht and Appel, JJ., join this dissent.