# In the Iowa Supreme Court

No. 24–1745

Submitted November 12, 2025—Filed January 9, 2026

**Sara Montague,** individually, as parent and next friend of **C.M.,** a minor, and as the duly authorized representative of the **Estate of Robert McFarland,** deceased,

Appellees,

vs.

**Beth Skinner, William Sperfslage, Samantha Tucker-Sieberg, Sarah Holder, Daniel Clark, Jeremy Larson, Michael Heinricy, Chad Kerker, Scott Eschen, Brian Tracy, Robert Hartig, Josh Baal, Tracy Dietsch, Jeremy Burds, Jon Day, Lucas Fowler, Ronnie Beemer, Lance Lake, Estate of Brian Ahlrichs, Michael Kray, Kurt Gillmore, Lawrence McMahon, Brian Suthers, John Clark, Todd Dingbaum,** and **Jerome Greenfield,**

Appellants.

Appeal from the Iowa District Court for Jones County, Michael Harris, judge.

Former co-employees of a state corrections officer who was killed in a prison escape attempt appeal the denial of their motion to dismiss gross negligence claims brought by the officer's surviving spouse. **Affirmed in Part, Reversed in Part, and Case Remanded.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General; Eric Wessan, Solicitor General; Patrick C. Valencia (argued), Deputy Solicitor General; Jeffrey C. Peterzalek, Adam Kenworthy, Nick Kilburg, and Nick Davis (until withdrawal), Assistant Attorneys General, for appellants.

Robert Rehkemper (argued), Cory F. Gourley, and Matthew Lindholm of Gourley, Rehkemper & Lindholm, PLLC, West Des Moines, and Troy A. Skinner and Kelli L. Paschke of Skinner & Paschke, PLLC, West Des Moines, for appellees.

**Mansfield, Justice.**

### I. Introduction.

There can be potential obstacles to suing State of Iowa employees; here, we consider several of them. The surviving spouse of a state prison guard murdered by two inmates in a 2021 escape attempt has brought gross negligence claims against a number of the guard's former co-employees. She alleges that her spouse's death resulted from serious security lapses that allowed dangerous inmates to walk into the prison infirmary wielding hammers from the prison's machine shop.

The state employees urge that Iowa workers' compensation law, while generally permitting gross negligence claims against co-employees, prohibits them against state and local government co-employees. The state employees also contend that even if gross negligence claims are allowed, the surviving spouse failed to comply with the administrative claims process of the Iowa Tort Claims Act (ITCA).

We disagree with the state employees' reading of workers' compensation law. The provision in question dates back to the 1913 origins of workers' compensation in Iowa and merely indicates that state and local governments and their employees *must participate* in the workers' compensation system, unlike private employers and employees who originally had a choice. Thus, the section provides that the workers' compensation chapter is "exclusive, compulsory, and obligatory" for state and local governments and their employees. Iowa Code § 85.2 (2024). But this means that the chapter as a whole applies, including its reservation for gross negligence claims against co-employees. *See id.* § 85.20(2).

We agree in part with the state employees' arguments with respect to the adequacy of the administrative claims under the ITCA. The surviving spouse

made clear in her administrative claims that she was pursuing an action against state employees and not an independent claim against the State, so this criticism is misplaced. But we agree with the state employees that the surviving spouse had to identify in her claims all the state employees at fault, as mandated by the state's administrative rule. *See* Iowa Admin. r. 543—1.4(1) (2024). Accordingly, she may only pursue litigation against those state employees previously identified as at fault in the administrative claims process.

For these reasons, we treat the state employees' notice of appeal as an application for interlocutory review, we grant the application, and we affirm the district court's denial of the motion to dismiss in part and reverse it in part.

## II. Facts and Procedural History.

This case arises out of the tragic events of March 23, 2021, at Anamosa State Penitentiary. Two inmates, Thomas Woodard and Michael Dutcher, armed with hammers and a grinder they had obtained from the prison's machine shop, entered the prison infirmary as part of an escape plan. There they beat to death Robert McFarland, a corrections officer, and Lorena Schulte, a nurse. Woodard and Dutcher did not succeed in getting out of the prison; they were both apprehended and convicted of first-degree murder. But the deaths of McFarland and Schulte sparked an outcry and several investigations.

On or about March 14, 2023, Sara Montague, the surviving spouse of McFarland, filed three claims for compensation with the state appeal board. She filed one claim individually, another as administrator of McFarland's estate, and a third as parent and next friend of the couple's minor child. Apart from the official name of the claimant, the claims were identical to each other. Each claim was submitted on the state appeal board form with pages attached. Montague signed each form under oath before a notary public.

The claims alleged that co-employees of McFarland within the Iowa Department of Corrections (IDOC) had been grossly negligent in allowing Woodard and Dutcher to have access to dangerous tools, to take those tools with them onto prison grounds, and to enter the infirmary without clearance while carrying those tools. Additionally, the claims listed eleven ways in which the security at Anamosa had been "[g]rossly insufficient" or "[g]rossly inadequate" due to the gross negligence of supervisors and staff of IDOC.

A box on the claim form asked Montague to "Select Type of Claim" from among "(1) General Claim," "(2) Tort Claim Against the State," and "(3) Tort Claim Against the State Employee(s)." It also stated, "A SEPARATE *claim must be filed by each claimant for each of the three types of claims defined below*." For the third category of claim, the form stated, "*Give employee(s) name and department*."

As noted, Montague filed only three claims in total—i.e., one claim for each capacity in which she was seeking compensation.[1] On each of these claims she checked *both* the second box—"(2) Tort Claim Against the State"—*and* the third box—"(3) Tort Claim Against State Employee(s)." She then explained that the attached pages identified "[p]otential at-fault co-employees" by highlighting them in bold. The attached pages listed fifty "persons [with] knowledge of any relevant facts related to this claim." Twelve of these individuals were IDOC employees whose names had been highlighted in bold and thus identified as potential at-fault co-employees.[2]

On March 22, the state appeal board responded, acknowledging receipt of the three claims and stating that they would be investigated by the attorney

---

[1]In this opinion we will use "Montague" to refer to the plaintiff suing in all three capacities.

[2]Montague added that she "expect[ed] that upon formal discovery additional responsible parties will be identified."

general. Eleven months later, Montague withdrew the claims so she could commence litigation. *See* Iowa Code § 669.5(1) ("[I]f the attorney general does not make final disposition of a claim within six months after the claim is made in writing to the director of the department of management, the claimant may, by notice in writing, withdraw the claim from consideration and begin suit under this chapter.").

On April 9, 2024, Montague filed suit in the Iowa District Court for Jones County, naming twenty-six IDOC co-employees as defendants. Eight of these individuals had been previously identified on the claim forms as potential at-fault co-employees. The petition set forth twenty-six separate counts of co-employee gross negligence, one for each defendant.

The defendants moved to dismiss the petition on three grounds. First, they urged that the petition did not meet the heightened pleading standards of particularity and plausibility under Iowa Code section 669.14A(3) necessary to overcome qualified immunity. Second, they argued that while private employees who suffer workplace injuries may bring actions against grossly negligent co-employees, section 85.2 bars such actions when a *public* employee suffers the injury. In that situation, according to the defendants, workers' compensation provides the exclusive remedy. Third, the defendants maintained that Montague had failed to exhaust administrative remedies under the ITCA because of deficiencies in her claims to the state appeal board.

Montague resisted the motion, and on October 9, the district court entered a ruling rejecting all three grounds for dismissal advanced by the defendants. On October 28, the defendants filed a notice of appeal pursuant to Iowa Code section 669.14A(4). *See id.* ("Any decision by the district court denying qualified immunity shall be immediately appealable.").

We retained the appeal.

**III. Standard of Review.**

"This court reviews rulings on motions to dismiss for the correction of legal error." *Venckus v. City of Iowa City*, 930 N.W.2d 792, 798 (Iowa 2019).

**IV. Legal Analysis.**

**A. Heightened Pleading Standards and Appellate Jurisdiction.** As noted, the district court found that Montague's petition met the heightened pleading standards in Iowa Code section 669.14A(3). We have since held in three published opinions that section 669.14A's counterpart in the Iowa Municipal Tort Claims Act (IMTCA)—including the heightened pleading requirements therein—does not apply to common law claims. *See Doe v. W. Dubuque Cmty. Sch. Dist.*, 20 N.W.3d 798, 807 (Iowa 2025) ("[T]he qualified immunity defense does not apply to state common law claims . . . ."); *Fogle & Fogle ex rel. P.F. v. Clay Elementary Sch.–Se. Polk Cmty. Sch. Dist.*, 27 N.W.3d 538, 545 (Iowa 2025) ("[Q]ualified immunity under the IMTCA does not apply to common law tort claims."); *City of Davenport v. Am. Family* (*In re Davenport Hotel Bldg. Collapse*), 27 N.W.3d 270, 273 (Iowa 2025) ("The qualified immunity provisions in [the IMTCA] do not apply to the common law tort claims asserted . . . in this case.").

The ITCA's qualified immunity provisions are essentially identical to the IMTCA's and were part of the same legislation. *See* 2021 Iowa Acts ch. 183, §§ 12, 14 (codified at Iowa Code § 669.14A (2022); *id.* § 670.4A). We think our reasoning in the IMTCA cases holds true here and we see no reason to repeat it. Accordingly, we hold that section 669.14A(3) cannot provide a basis for dismissal.

This step requires us then to address our jurisdiction over this appeal. At the time the district court denied the defendants' motion to dismiss, the foregoing

trilogy of cases had not been decided. The defendants viewed the district court's ruling as a "decision denying qualified immunity" and appealed it pursuant to section 669.14A(4). *See* Iowa Code § 669.14A(4) ("Any decision by the district court denying qualified immunity shall be immediately appealable."); *see also* Iowa R. App. P. 6.108 ("When a statute or rule authorizes an appeal as a matter of right, other than from a final order or judgement, appeal is taken by filing a notice of appeal as provided in rule 6.102, except that the notice must also specify the statute or rule providing the right to appeal."). On November 26, 2024, our court refused Montague's request that we dismiss the appeal.

But now that we have determined that section 669.14A does not apply to Montague's claims, this means that section 669.14A(4) did not authorize the defendants' appeal as a matter of right. We would ordinarily dismiss the appeal for lack of appellate jurisdiction at this point—the step we took in *Fogle & Fogle ex rel. P.F. v. Clay Elementary School–Southeast Polk Community School District. See* 27 N.W.3d at 545. However, this case involves other threshold grounds for dismissal in addition to qualified immunity. Those grounds have been briefed by the parties both here and below and ruled on by the district court. Therefore, we elect to treat the defendants' appeal as an application for interlocutory appeal. *See* Iowa R. App. P. 6.151(1) (allowing an appeal initiated through a notice of appeal to be treated as an application for interlocutory appeal if that is the proper form of review); *State v. T.J.W.*, 2 N.W.3d 853, 856 (Iowa 2024) (treating a notice of appeal as a petition for certiorari and granting it); *MC Holdings, L.L.C. v. Davis Cnty. Bd. of Rev.*, 830 N.W.2d 325, 328 n.1 (Iowa 2013) (treating a notice of appeal from a denial of summary judgment as an interlocutory appeal). Although appeals before final disposition are generally disfavored, they are appropriate when "the interest of sound and efficient judicial administration can best be

served." *Banco Mortg. Co. v. Steil*, 351 N.W.2d 784, 787 (Iowa 1984) (en banc). That includes situations involving "a pretrial determination of a controlling issue of law," particularly one that has not previously been decided by our court. *Id.* Such is the case here. We therefore grant interlocutory review and proceed to the merits.

**B. Exclusivity of Workers' Compensation.** Iowa Code section 85.20 is entitled, "Rights of employee exclusive." It provides,

> The rights and remedies provided in this chapter . . . for an employee . . . on account of injury . . . for which benefits under this chapter . . . are recoverable, shall be the exclusive and only rights and remedies of the employee . . . , the employee's . . . personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury . . . against any of the following:
>
> 1. Against the employee's employer.
>
> 2. Against any other employee of such employer, provided that such injury . . . arises out of and in the course of such employment and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.

*Id.* § 85.20(1)–(2).

In sum, section 85.20 makes workers' compensation the employee's exclusive remedy for any work-related injury as against their employer or co-employees, except for gross negligence claims against co-employees. *See Mehmedovic v. Tyson Foods, Inc.*, 21 N.W.3d 412, 422–24 (Iowa 2025). We recently explained the genesis of this co-employee gross negligence exception:

> [A]s of 1973, an employee could bring a common law claim against coemployees based on tort theories. In 1974, the statute was amended to extinguish common law claims against coemployees except for those founded in gross negligence. *See* 1974 Iowa Acts ch. 1111, § 1 (codified at Iowa Code § 85.20 (1975)); *Gourley v. Nielson*, 318 N.W.2d 160, 160–61 (Iowa 1982). Thus, the common law claims

against coemployees for gross negligence survived the amendment and are not within the scope of our workers' compensation statutes.

*Terry v. Dorothy*, 950 N.W.2d 246, 249–50 (Iowa 2020).

We have recognized the existence of the gross negligence exception in cases involving state employees. *See Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 19–20 (Iowa 2014); *McGill v. Fish*, 790 N.W.2d 113, 120 (Iowa 2010); *Allied Mut. Ins. v. State*, 473 N.W.2d 24, 26 (Iowa 1991). Thus, in *Smith v. Iowa State University of Science & Technology*, we upheld a jury verdict awarding damages to a former employee of Iowa State University based on a claim for intentional infliction of emotional distress against co-employees. 851 N.W.2d at 38. We found that such a claim was governed by section 85.20(2), even though the ITCA provides that the state is substituted as a party when the plaintiff sues a state employee acting within the scope of their employment. *Id.* at 19–20.

In *McGill v. Fish*, we held that a University of Iowa employee bringing claims against co-employees for gross negligence must first comply with the exhaustion provisions of the ITCA because his claims were not "covered" by workers' compensation. 790 N.W.2d at 119–20; *see also* Iowa Code § 669.14(5). Instead, his claims were "exempted" from workers' compensation by section 85.20(2). *McGill*, 790 N.W.2d at 120.

In *Allied Mutual Insurance*, a state employee who was a passenger in a vehicle driven by another state employee was severely injured when that vehicle collided with a vehicle driven by Allied's insured. 473 N.W.2d at 25. The state employee-passenger settled with Allied. *Id.* We rejected Allied's contribution claim against the state employee-driver, reasoning that the evidence was insufficient to establish gross negligence on the driver's part, and "[b]ecause [the state employee-driver] and [the state employee-passenger] were co-employees,

[the state employee-driver] is afforded the protection from liability contained in Iowa Code section 85.20(2)." *Id.* at 26.

Notwithstanding this caselaw, the defendants urge in the present case that co-employee gross negligence claims are *not* available against state co-employees, or even against local government co-employees. They rely on Iowa Code section 85.2, which provides,

> Where the state, county, municipal corporation, school corporation, area education agency, or city under any form of government is the employer, the provisions of this chapter for the payment of compensation and amount thereof for an injury sustained by an employee of such employer shall be exclusive, compulsory, and obligatory upon both employer and employee, except as otherwise provided in section 85.1.

According to the defendants, this language makes workers' compensation benefits under chapter 85 the only remedy available to injured employees of state or local government. Per the defendants, there can be no co-employee gross negligence claims for public employees. Montague disagrees. She contends that section 85.2 simply makes the system of compensation in chapter 85 as a whole mandatory for injured employees of state or local government. That includes the exception for co-employee gross negligence claims in section 85.20(2).

Although both readings are possible, we think Montague has the better reading. For one thing, section 85.2 does not speak of exclusive *remedies*, the way section 85.20 does. Rather, it indicates that the provisions of "this chapter" for the payment of compensation and amount are exclusive and mandatory for state and local employees. *Id.* Logically, this would include *all* provisions of chapter 85, including section 85.20(2)'s carveout permitting co-employee gross negligence claims.

In *McGill*, we adhered to this logic. When we determined that the plaintiffs' co-employee gross negligence claims were allowed by section 85.20(2), we also

characterized section 85.2 in a parenthetical as "including state workers and the state, as an employer, within the workers' compensation *scheme*." *McGill*, 790 N.W.2d at 120 (emphasis added).

Moreover, the defendants' interpretation sets up a conflict between section 85.2, which in their view bars co-employee gross negligence claims by state and local employees, and section 85.61(3). The latter section indicates that the term "employer," as used in chapter 85, includes state and local governments. Iowa Code § 85.61(3)(*a*) ("In . . . this chapter . . . , unless the context otherwise requires, the following definitions of terms shall prevail . . . . '*Employer*' includes and applies to the following: . . . [a] state, county, municipal corporation, school corporation, area education agency . . . ."). Thus, when section 85.20(2)'s gross negligence exception refers to "any other employee of such employer," the exception includes state and local government employers. *Id.* § 85.20(2).

Additionally, the defendants' interpretation would bar claims by injured state and local government employees against private third parties. Recognizing that this would be an untenable outcome, the defendants say it wouldn't happen. They insist that their interpretation of section 85.2 simply "limits the State's sovereign immunity waiver"; it does not affect the liability of third parties. But that answer doesn't align with the defendants' own reading of section 85.2. Either section 85.2 means that workers' compensation benefits are the government employee's exclusive remedy or it doesn't. There is no clean interpretive path that allows one to say they are the exclusive remedy of the government employee *except for* claims against private third parties.

As noted, language in *Smith*, *McGill*, and *Allied Mutual* supports the availability of co-employee gross negligence claims by state employees. *See Smith*, 851 N.W.2d at 20 ("[W]e agree with Smith that his claims against [state

university co-employees] for intentional infliction of emotional distress are exempt from the IWCA under section 85.20(2) . . . ."); *McGill*, 790 N.W.2d at 120 ("[T]here is no indication whatsoever our legislature sought to bar coemployee gross negligence claims by state workers when it amended the procedures in the ITCA to require the state to be substituted as a defendant in the lawsuit once it is determined the coemployee acted in the course of employment."); *Allied Mutual*, 473 N.W.2d at 26 ("[T]he element of gross negligence on the part of [the state co-employee] is necessary to establish a common liability which Allied must establish in seeking contribution.").

Notably, in *McGill*, the attorney general, representing the co-employees, successfully argued that an injured state employee's gross negligence claims against those co-employees were not "covered by" workers' compensation. 790 N.W.2d at 119–20; *see also* Iowa Code § 669.14(5). In the attorney general's view—which prevailed in our court—the plaintiffs had to comply with the administrative procedures of the ITCA if they wanted to go forward. *McGill*, 790 N.W.2d at 119–20. That's essentially the opposite of the position the attorney general takes here—namely, that the workers' compensation law blocks those claims.

In fairness, the defendants are correct that neither *Smith*, *McGill*, nor *Allied Mutual* specifically dealt with the defendants' present argument concerning section 85.2. But section 85.2 has been around since 1913. If it barred co-employee claims by injured government employees, one would have expected someone to have noticed earlier and to have raised the point.

The defendants argue that Montague's interpretation of section 85.2 renders that section superfluous. But as Montague explains in her briefing, that wasn't originally the case. When Iowa first adopted its workers' compensation

law in 1913, it gave most employers the right to reject workers' compensation coverage. *See* 1913 Iowa Acts ch. 147, § 1(c) (codified at Iowa Code § 2477-m(c) (Supp. 1913)). The legislation made clear, however, that state and local governments did not have the option of rejecting coverage:

> *Compulsory.* Where the state, county, municipal corporation, school district, cities under special charter or commission form of government is the employer, the terms, conditions and provisions of this act for the payment of compensation and amount thereof for such injury sustained by an employee of such employer shall be exclusive, compulsory and obligatory upon both employer and employee.

*Id.* ch. 147, § 1(b) (originally codified at Iowa Code § 2477-m(b) (Supp. 1913), now codified as amended at Iowa Code § 85.2 (2024)). That section, of course, is the predecessor to section 85.2 in today's Code. Iowa Code section 85.2 even retains the word "compulsory" in its title, consistent with its purpose of making workers' compensation coverage compulsory for state and local governments. *See State v. Hall*, 969 N.W.2d 299, 307 (Iowa 2022) ("Although the title of a statute cannot change the plain meaning of the statutory text, it can be considered in interpreting the text.").

As explained by one commentator,

> For many years the Iowa workmen's compensation law has been exclusive, compulsory and obligatory upon both employer and employee where the state, county, municipal corporation, school district, county board of education, or city is the employer.

Harry W. Dahl, *Statutory Changes in Iowa Workmen's Compensation*, 21 Drake L. Rev. 153, 153 (1971). In 1970, the legislature built on this approach and made workers' compensation compulsory for all employers unless specifically excepted. *Id.*; *see also* Iowa Code § 85.3(1) ("Every employer, not specifically excepted by the provisions of this chapter, shall provide, secure, and pay compensation according to the provisions of this chapter for any and all personal

injuries sustained by an employee arising out of and in the course of the employment, and in such cases, the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury."). At that point, section 85.2 became arguably unnecessary and perhaps could have been removed. But a legislature's failure to act, as occurred in 1970, deserves less interpretive weight than its affirmative enactment of legislation, as occurred in 1913.

The defendants also maintain that Montague's reading of Iowa Code section 85.2 renders superfluous the final clause of the section—"except as otherwise provided in section 85.1." We disagree. Iowa Code section 85.1 is entitled, "Inapplicability of chapter," and lists various exclusions from the workers' compensation system *as a whole*. These exclusions include, for example, firefighters and police. *Id.* § 85.1(4) ("Persons entitled to benefits pursuant to chapters 410 and 411."). Without this last clause, there would be an internal contradiction within Iowa law: section 85.2 would say that chapter 85 covers firefighters and police, whereas section 85.1 would say that it didn't. None of this undermines our essential point that public employees, unless excluded by section 85.1, are subject to chapter 85 as a whole, including section 85.20(2)'s express carveout for gross negligence.

For all these reasons, we conclude that section 85.2 does not bar an injured state employee from bringing claims outside of workers' compensation against a co-employee for gross negligence.

**C. Failure to Exhaust Administrative Claims Process.** Finally, the defendants argue that Montague failed to comply with the ITCA's administrative claims process, thus necessitating the dismissal of her co-employee gross

negligence claims. *See Anderson v. State*, 2 N.W.3d 807, 813–14 (Iowa 2024) (describing the administrative claims process).

We begin with the statute. It provides, "A claim made under this chapter shall be filed with the director of the department of management, who shall acknowledge receipt on behalf of the state. . . . The state appeal board shall adopt rules and procedures for the handling, processing, and investigation of claims . . . ." Iowa Code § 669.3(2)–(3).

The state appeal board has adopted rules regarding administrative claims. *See* Iowa Admin. Code rs. 543—1.3–1.5. Rule 543—1.4(5) states that "[c]laims may be in any form, but shall contain the information required by rules 1.3(25A) and 1.4(25A)." *Id.* r. 543—1.4(5). It adds that "[p]rinted forms can be obtained from the secretary of the state appeal board." *Id.*

The defendants point to two alleged deficiencies in Montague's administrative claims. First, they contend that Montague neglected to submit *separate* claims against the State and against the culpable co-employees. In their view, Montague's joint claims against the State and the co-employees at fault were not sufficient.

Second, the defendants insist that only those individuals *identified by name* as co-employees at fault in Montague's administrative claims may be sued in district court. The ITCA lawsuit, in other words, cannot expand on the list of potential state employee defendants identified in the administrative claims.

Both deficiencies, according to the defendants, amount to violations of the following rule:

> 1.4(1) *Type of claim.* A claim shall state whether it is against an employee or the state. If the claim is against an employee the name of the employee and the department where employed shall be stated. A separate claim shall be filed for each type by each claimant.

*Id.* r. 543—1.4(1).

1. *Type of claim.* We are not persuaded by the defendants' arguments concerning the first alleged deficiency. It is true that Montague checked the box for "Tort Claim Against the State" *and* the box for "Tort Claim Against State Employee(s)" on each of her three claims—individual capacity, administrator, and parent and next friend of the minor child. And it is also true that rule 543—1.4(1) requires a separate claim "for each type," while requiring the claim to disclose which type it is. *Id.*

But Montague did not have, nor did she actually assert, two types of claims. And it was always clear which kind of claim she was asserting. Legally, Montague had no claim against the State, as distinct from state employees, and she has never contended otherwise. *See* Iowa Code § 85.20(1) ("The rights and remedies provided in this chapter . . . for an employee . . . on account of injury . . . for which benefits under this chapter . . . are recoverable, shall be the exclusive and only rights and remedies of the employee . . . , the employee's . . . personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury . . . against . . . the employee's employer."). At all times, the law permitted Montague to bring only gross negligence claims against state employees, which under the ITCA could later be "deemed" an action against the State. *Id.* § 669.5(2)(*a*).

The body of Montague's administrative claims made clear that she was complaining about the gross negligence of co-employees:

> [C]o-employees of Robert McFarland . . . were grossly negligent in . . . .
>
> Co-employees of Robert McFarland . . . were also grossly negligent in . . . .

> All of these actions and omissions . . . by co-employees of Robert McFarland were of such an unreasonable character in disregard of the risk known to or so obvious that the co-employees must be taken to have been aware of the risk, and so great as to make it highly probable that harm would follow to Robert McFarland or others similarly situated.

> The law was clearly established that co-employees are liable for gross negligence . . . .

Regarding the State, Montague alleged in her claims only that the State was derivatively "liable for the gross negligence of its employees," citing to section 669.5, section 85.20(2), and *McGill*. Simply stated, the text of Montague's claims disclosed that they were claims against state employees, with the State liable only because of the substitution provisions of the ITCA. Likewise, when Montague filed the present action, she named as defendants only co-employees, not the State itself.

All this means that Montague did not in fact submit two types of administrative claims or a "joint" claim, as the State contends. Montague had only *one* type of claim—i.e., against state employees for gross negligence—and the claim's text explained that.

So, the defendants' position on the first alleged deficiency boils down to, "You checked an extra box that you shouldn't have."[3] Yet checking an extra box on a form whose use is optional does not affect our answer to the dispositive question. In *Anderson v. State*, we noted, "Pursuant to its rule-making authority, the state appeal board has prescribed the form and content of tort claims. When a claim meets those form and content requirements, it is properly presented." 2 N.W.3d at 814 (citation omitted) (quoting *Swanger v. State*, 445 N.W.2d 344, 350

---

[3]Even so, Montague could respond that her box-checking was technically accurate. As the body of her claims explained, the State was and is *derivatively liable* under the ITCA for claims against state employees acting within the scope of their office or employment. *See* Iowa Code § 669.5(2).

(Iowa 1989)). Montague's administrative claims met these specific form and content requirements of rule 543—1.4(1): they indicated that Montague was pursuing gross negligence claims against state employees, with the State derivatively liable (not independently liable) under Iowa Code section 669.5(2).

Notably, in *Anderson*, we similarly read the claims "as a whole," including the "narrative section." 2 N.W.3d at 816. The difference in *Anderson* was that a holistic reading confirmed the alleged deficiency in the claims. *See id.* Here it refutes it.

2. *Names of state employees.* We find greater merit in the State's second objection. When a claim is brought against one or more state employees, rule 543—1.4(1) also requires the claim to state "the name of the employee[s] and the department where employed." Iowa Admin. Code r. 543—1.4(1). Montague's claims identified eight culpable co-employees by name and department, but omitted other individuals whom she ultimately sued.

In *Anderson*, 2 N.W.3d at 814, we gave effect to the state appeal board's rule 543—1.3(3) and part of its rule 543—1.4(1). The former requires a claim to state "the name, address, telephone number, and age of the person making the claim." Iowa Admin. Code r. 543—1.3(3). The latter requires "[a] separate claim . . . [for] each claimant," *id.* r. 543—1.4(1). Because the only claims were filed by the mother as administrator of the decedent child's estate, and not by the mother or the father individually, neither of them could later pursue litigation against the State in their individual capacity. *Anderson*, 2 N.W.3d at 814–15 ("Because Terry and Alexandria did not submit separate individual claims, the presentment requirement was not met as to their individual claims.").

The same rationale applies here. Instead of failing to submit claims on behalf of all plaintiffs as required by the rules, *see id.*, Montague failed to submit

claims against all defendants as also required by the rules. We believe she cannot now name additional state employees as defendants in her lawsuit.

The district court rejected the defendants' argument because the "ITCA does not require the claimant to identify each individual defendant." But of course, the ITCA says relatively little about the content and form of claims. Rather, it delegates that authority to the state appeal board. It states that a claim "shall be filed with the director of the department of management" and that "the state appeal board shall adopt rules and procedures for the handling, processing, and investigation of claims." Iowa Code § 669.3(2)–(3). We have previously given legal effect to the state appeal board's rules. In *Anderson*, we based our decision on the plaintiffs' failure to comply with those rules. 2 N.W.3d at 814.

We think rule 543—1.4's requirement to identify the legally responsible state employee or employees follows logically from the language of the ITCA itself. The ITCA defines "claim" as either a claim against the state or a "claim against an employee of the state." Iowa Code § 669.2(3). And it requires *that claim* to be filed administratively before suit is brought. So it makes sense for the actual employee or employees to be designated in the administrative claim.

In its ruling, the district court cited to *Voss v. State* (*In re Estate of Voss*), where we stated, "The administrative process set forth in chapter 669 is intended to allow a prompt investigation of claims against the State and facilitate an early settlement when possible." 553 N.W.2d 878, 881 (Iowa 1996). But that general statement of purpose doesn't resolve the specific issue before us. In any event, one could argue that it furthers investigation and settlement to have all the targets of the expected litigation identified.

Montague also points out that she did the best she could given that "[t]he State was, and still is, in possession and control of all facts giving rise to

Plaintiffs' claims." She notes that she included the following caveat in her claims:

> Claimants have requested the investigative reports from the Iowa Department of Criminal Investigation as well as Occupational Safety and Health Administration in order to obtain more detailed facts about the specifics of this incident but to date the State of Iowa has refused to make those available through the public records request process. As such, claimants expect that upon formal discovery additional responsible parties will be identified as well as potential additional causes of action.

We are sympathetic to these concerns. Still, Montague had two years from the date of her husband's death to submit her claims. *See* Iowa Code § 669.13(1). And she submitted them at the very end of that period—two years minus eight days from the date of her husband's death. We have previously held that the legislature may enact more restrictive statutes of limitations for actions against governmental defendants. *See Doe v. New Lond. Comm. Sch. Dist.*, 848 N.W.2d 347, 357 (Iowa 2014). But it's not clear that this statute of limitations is more restrictive. Had McFarland been injured while employed by *a private employer*, he would have had two years to bring a co-employee gross negligence claim in district court, naming all the co-employees at fault. *See* Iowa Code § 614.1(2). Thereafter, additional co-employees could be joined only if

> the party to be brought in by amendment has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Iowa R. Civ. P. 1.402(5).

For the foregoing reasons, we hold that the defendants' motion to dismiss should have been granted for those defendants not identified as potential co-employees at fault in Montague's administrative claims. As to these individuals, Montague failed to exhaust the administrative claims process. *See Anderson, 2 N.W.3d at 814–15.*

**V. Conclusion.**

Accordingly, we grant the defendants' conditional application for interlocutory appeal, and we affirm the denial of the motion to dismiss as to defendants Skinner, Spersflage, Clark, Larson, Gibbs, Burds, Day, and Estate of Aldrichs. We reverse the denial of the motion to dismiss as to the remaining defendants and remand for further proceedings consistent with this opinion.

**Affirmed in Part, Reversed in Part, and Case Remanded.**